STATE of Iowa, Appellee,

v.

Valentino MAGHEE, Appellant.

No. 96–1135.

Supreme Court of Iowa.

Nov. 26, 1997.

Rehearing Denied Jan. 9, 1998.

F. Montgomery Brown of Cook, Gotsdiner, McEnroe & McCarthy, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Robert P. Ewald, Assistant Attorney General, John P. Sarcone, County Attorney, and Jamie D. Bowers, Assistant County Attorney, for appellee.

Considered by McGIVERIN, C.J., and LAVORATO, NEUMAN, ANDREASEN, and TERNUS JJ.

LAVORATO, Justice.

This case presents a twist in the war on drugs: a "reverse sting" operation in which the police are doing the selling rather than the buying. The defendant, Valentino Maghee, was one of the targets in this operation. A jury convicted him of possession with intent to deliver, conspiracy to possess with intent to deliver, and failure to affix a drug tax stamp. He raises numerous issues in his appeal from his convictions and sentences, some of which we address and others we preserve for postconviction relief. Some of the issues we do address concern whether the district court correctly (1) allowed the State to amend the trial information to charge an offense carrying a higher penalty, (2) submitted conspiracy as a separate of-fense, and (3) defined "constructive possession" in a jury instruction. The remaining issues we address deal generally with whether there was sufficient evidence to support convictions on all three offenses.

Although we affirm on all issues, we conclude conspiracy was not a separate offense. Rather it was an alternative means of violating Iowa Code section 124.401(1), Iowa's drug trafficking statute. We therefore vacate the sentence on the conspiracy conviction, and let the balance of the sentence stand. We affirm the judgment of convictions and sentences as modified.

I. *Background Facts and Proceedings.*

A Des Moines police officer, Craig Hamilton, received information from a Federal Bureau of Investigations officer in Chicago that Valentino Maghee had contacted a confidential informant. According to the informant, Maghee wished to buy cocaine. The informant provided Maghee with Hamilton's beeper number. Maghee then "beeped" Hamilton and the two arranged a meeting.

On May 5, 1994, Hamilton and Maghee met at a bar in Des Moines. The two agreed that Hamilton would provide three kilograms of cocaine to Maghee on May 7 for $20,000 per kilo. Maghee told Hamilton a third man, Anthony Gress, would bring the money.

The following day, in preparation for the sale, Officer Kelly Evans contacted a state chemist for information on the proper proportion of cocaine to filler material for the three kilograms. The chemist told Evans that the law required a detectable amount of cocaine to be present in any substance, roughly five grams of cocaine per kilo. Evans then obtained thirty-three grams of cocaine from two previous criminal cases. He mixed the cocaine with powdered sugar and flour, weighed out slightly more than three kilograms of the mixture, wrapped the mixture in cellophane, and packaged the mixture in three Tupperware containers wrapped in duct tape. Each container contained slightly more than one kilo.

On May 7, as planned, Hamilton met with Maghee and Gress at a Des Moines motel where Hamilton had rented three rooms.

Maghee and Gress waited in one room. Hamilton brought a suitcase containing the three Tupperware containers of the cocaine mixture to them from the second room, while Evans and other officers surveilled from the third room.

When Hamilton entered Maghee's and Gress's room, he saw money sitting on the dresser. Hamilton laid the suitcase on the bed, unzipped it, and pulled out the three Tupperware containers. Gress put the containers on the dresser and said he wanted to test the cocaine but he had no knife. Seeing this as his opportunity to leave the room and alert the surveillance officers, Hamilton told Gress he had a knife in his room and that he would get it. Hamilton left and signaled surveillance officers to storm Maghee's room and make the arrests.

When the officers entered the room, the cocaine and money were on the dresser, Maghee was standing by the door, and Gress was standing by the dresser. The officers seized, among other things, $61,100 in cash from the dresser, $15,000 in cash from Maghee's coat pocket, and $7,789 in cash from Gress's pants pocket. The officers found no tax stamps.

At trial, the State offered and the court received into evidence audiotapes of (1) the original May 5 meeting at the bar, (2) telephone calls between Hamilton and Maghee, and (3) conversations in Maghee's and Gress's room, which had been "bugged." Surveillance officers had videotaped portions of the May 5 meeting and portions of events at the motel meeting on May 7. The videotapes were also received into evidence.

In a three count trial information, the State charged Maghee with possession with intent to deliver a controlled substance, conspiracy to possess with intent to deliver a controlled substance, and failure to affix a drug tax stamp. *See* Iowa Code §§ 124.401(1), 453B.3 (1993).

On the morning of trial, the State moved to amend the trial information to correct an "oversight and clerical error." Specifically, the State wished to change the charged possession and conspiracy offenses from a class "C" to a class "B" felony. *Compare id.*

§ 124.401(1)(*c* )(2)(b) (making it a class "C" felony and providing for ten year sentence if the drugs involved weigh five hundred grams or less), *with id.* § 124.401(1)(*b* )(2)(b) (making it a class "B" felony and providing for twenty-five year sentence if the drugs involved weigh more than five hundred grams but not more than one kilogram). The district court allowed the amendment over Maghee's resistance.

The district court overruled Maghee's motions for judgment of acquittal and his objection to several jury instructions. Thereafter the jury returned a verdict of guilty on all three counts. In a special interrogatory, the jury found the amount of cocaine in question was more than 500 grams but not more than 5 kilograms.

The court sentenced Maghee to a term of imprisonment not to exceed twenty-five years for possession with intent to deliver a controlled substance, twenty-five years for conspiracy to possess with intent to deliver a controlled substance, and five years for failure to affix a drug tax stamp. *See id.* § 902.9. The court ordered these sentences to "be served concurrently with each other but consecutively to a sentence defendant is presently serving." The court also ordered that Maghee serve one-third of the concurrent sentences imposed before he is eligible for parole. *See id.* § 901.10; *State v. Thomas,* 547 N.W.2d 223, 225–26 (Iowa 1996).

Maghee appealed and we consider the following issues raised:

1. Whether the district court correctly allowed the State to amend the trial information to charge a class "B" felony rather than a class "C" felony;

2. Whether the district court erred in submitting conspiracy to possess with intent to deliver a controlled substance as a separate charge;

3. Whether the district court's instruction defining "constructive possession" was erroneous;

4. Whether there was sufficient evidence to support a verdict of guilty for violation of the drug tax stamp statute;

5. Whether the district court erred in submitting counts I and II on the theo-

ry that it was the weight of the mixture that mattered rather than the purity of the cocaine in question; and

6. Whether there was sufficient evidence to support a finding that Maghee possessed more than 500 grams of cocaine.

## II. *Amendment of Trial Information.*

In resisting the State's motion to amend the trial information, Maghee argued "surprise." The surprise, he contended, was that he was prepared to defend a class "C" felony (500 grams or less of cocaine) and not a class "B" felony (more than 500 grams of cocaine). In support of his contention, Maghee argued that depositions of State's witnesses established that only 33 grams of cocaine were involved, not 3000 grams.

■ Iowa Rule of Criminal Procedure 4(8) governs amendments to trial informations. It provides in part:

The court may, on motion of the state, either before or during the trial, order the indictment amended so as to correct errors or omissions in matters of form or substance. Amendment is not allowed if substantial rights of the defendant are prejudiced by the amendment, or if a wholly new or different offense is charged.

Iowa R.Crim. P. 4(8)(a). The first part of the rule is discretionary: the district court *may* order amendment so as to correct errors or omissions that either are or are not substantive. Iowa Code § 4.1(30) (provides that word "may" in statute confers a power). Our review up to this point of the rule is therefore for abuse of discretion. We find an abuse of discretion only when the party claiming such shows that the court exercised the discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable. *State v. Vanover,* 559 N.W.2d 618, 627 (Iowa 1997).

The second part of the rule limits the district court's discretion: The district court must not allow the amendment if the amendment prejudices substantial rights of the defendant *or* the amendment charges a wholly new or different offense. Thus, our review is for correction of errors at law for this part of

the rule. *State v. Sharpe,* 304 N.W.2d 220, 223 (Iowa 1981) (holding it was *error* to allow State to amend indictment charging second-degree murder by substituting first-degree murder because the amendment charged a wholly new and different offense); *see* Iowa R.App. P. 4.

We have interpreted rule 4(8)(a) to require a two-part test:

A trial information, like an indictment, may be amended to correct errors or omissions of form or substance, so long as a two-pronged test is satisfied: (1) substantial rights of the defendant are not prejudiced thereby, and (2) a wholly new or different offense is not charged.

*State v. Berney,* 378 N.W.2d 915, 919 (Iowa 1985).

■ A. *"Wholly new or different offense."* Although Maghee did not expressly mention "wholly new or different offense" in arguing to the district court, his arguments could be construed to raise the issue. However, as the State points out, the original charges and the amended charges involve violations of the same code section: Iowa Code section 124.401(1). This provision contains the base prohibition that no one shall manufacture, deliver, or possess with the intent to manufacture or deliver certain controlled substances or conspire to do so. The elements under the original or amended charges are therefore the same. The penalties are different depending on the amount of drugs involved. *Compare* Iowa Code § 124.401(1)(*c*)(2) (making it a class "C" felony and providing for ten year sentence if the drugs involved are five hundred grams or less), *with id.* § 124.401(1)(*b*)(2) (making it a class "B" felony and providing for twenty-five year sentence if the drugs involved are more than five hundred grams but not more than one kilogram).

We agree with the State that under these circumstances the amendment did not charge a "wholly new or different offense." Rather, the amendment charged the same offense but with a larger amount of drugs involved resulting in a potentially more severe sentence. *Cf. Berney,* 378 N.W.2d at 919 (holding that amendment alleging defendant to be habitual offender under Iowa Code section

902.8 (1983) did not define a new crime but merely constituted a predicate for enhanced punishment); *Sharpe*, 304 N.W.2d at 222–23 (holding that first degree-murder is a "wholly new and different offense" than second-degree murder based in part on different elements).

B. *Prejudice*. The question remains whether the amendment prejudiced "substantial rights" of Maghee. An amendment prejudices the substantial rights of the defendant if it creates such surprise that the defendant would have to change trial strategy to meet the charge in the amended information. *State v. Fuhrmann*, 257 N.W.2d 619, 624 (Iowa 1977).

Contrary to Maghee's claim, we find no surprise and therefore no prejudice here. As the district court noted, the minutes of testimony attached to the original trial information put Maghee on notice that the State considered his case to be a major drug offense. The minutes mention the agreement to sell three kilos of cocaine at a price of $20,000 per kilo. The minutes also state that after the arrests the officers found $61,100 on the top of the dresser as well as the cocaine and describe the amount of money taken from Maghee and Gress. The minutes further provide that a state criminalist would testify regarding "the examination and analysis of approximately three kilograms of substance containing cocaine," as well as the "preparation of the three kilograms of cocaine mixture associated with this investigation."

Moreover, Maghee's counsel appeared ready to defend against the actual weight of the cocaine mixture and its applicability to the class "B" felony amended charge. We say this because he did not ask for the traditionally appropriate remedy for a defendant's claim of surprise: a continuance. *State v. Schertz*, 330 N.W.2d 1, 2 (Iowa 1983) ("The appropriate remedy for a defendant's claim of surprise is, of course, to order a continuance. . . ."). Rule 4(8)(d) contemplates such relief. Iowa R. Crim P. 4(8)(d) (providing that where amendment is allowed no continuance shall be granted "unless it appears that defendant should have additional time to prepare because of such amendment").

Finally, the amendment did not change Maghee's defense strategy. His defense turned on his assertion that he never possessed the cocaine, whatever the amount. Additionally, in return for leniency on a charge pending against him, Maghee claimed that he was operating as a government agent to snare Gress.

We conclude the district court did not abuse its discretion in allowing the amendment whether it was to correct a clerical error as the State claimed or whether it was to correct a substantive error or omission. Further, the court committed no legal error because the amendment neither (1) charged a wholly new and different offense nor (2) prejudiced Maghee's substantial rights.

III. *Submission of Conspiracy as a Separate Offense.*

Before selection of the jury, Maghee moved to dismiss the conspiracy count as "duplicitous or redundant." The State resisted, but conceded that at sentencing count I and count II should be merged. The court denied the motion. Maghee contends the district court erred in submitting the conspiracy count as a separate offense rather than as an alternative means of committing the underlying drug offense.

Contrary to Maghee's claim on appeal, Maghee did not renew this motion as part of his motion for judgment of acquittal either at the close of the State's case or at the close of all the evidence. Nor did he object to the submission of the conspiracy count as a *separate* offense when making his record on the instructions. Thus, the parties tried the case as though the conspiracy count was a separate offense. Maghee's claim here that the district court erred in submitting the conspiracy count as a separate offense is therefore not preserved for our review.

Our inquiry, however, does not end here. The jury convicted Maghee on all three counts. At sentencing, no one suggested that counts I and II should merge. So, the court sentenced Maghee to indeterminate

twenty-five year sentences on each of those counts.

The State concedes Maghee could not be convicted and sentenced for both counts I and II and contends *State v. Williams,* 305 N.W.2d 428 (Iowa 1981) controls. We agree.

In *Williams,* the State charged the defendant with three separate counts: (1) possession of a controlled substance with intent to deliver it for profit; (2) delivery of it for profit; and (3) conspiracy to do those acts. The State had earlier amended the trial information to include the conspiracy count. The case was tried to the court, which found the defendant guilty on all three counts. Later the court sentenced the defendant on all three counts. On appeal, the defendant claimed the amendment was error because the conspiracy count was a "wholly new and different offense" impermissible under Iowa Rule of Criminal Procedure 4(8)(a).

This court held in *Williams* that conspiracy was not a wholly new and different offense. Rather conspiracy was only one of the alternative means of violating Iowa Code section 204.401 (1977), Iowa's drug trafficking statute as it existed then. *Williams,* 305 N.W.2d at 431, 434. Therefore the amendment was permissible under rule 4(8)(a). *Id.*

For double jeopardy purposes, however, this court in *Williams* held that the defendant could only be sentenced for a single offense, a violation of Iowa Code section 204.401(1)(a). *Id.* at 434. The court affirmed as to the violation of section 204.401(1)(a), but reversed insofar as sentences for three individual "offenses" were imposed. *Id.* The court remanded for resentencing for a single offense, a violation of section 204.401(1)(a). *Id.*

Likewise, here, the conspiracy count was an alternative means of violating Iowa Code section 124.401(1), our present drug trafficking statute. Thus, Maghee could only be sentenced for a single offense, a violation of section 124.401(1). The district court committed error when it sentenced Maghee on the conspiracy count. We must vacate the sentence on the conspiracy count insofar as sentences for two individual "offenses" (possession and conspiracy) were imposed. *See*

Iowa R.Crim. P. 23(5)(a) (providing that illegal sentence may be corrected at any time); *State v. Taft,* 506 N.W.2d 757, 763 (Iowa 1993) (holding sentence violating double jeopardy principles as illegal). We can sever the conspiracy sentence without disturbing the balance of the sentence. We therefore let the balance of the sentence stand. *See State v. Hutt,* 548 N.W.2d 897, 899 (Iowa App.1996) (holding that where improper sentence imposed is severable, severing court may strike invalid part of sentence without disturbing the rest).

IV. *Instruction on Constructive Possession.*

■ The district court gave the following instruction on possession:

The word "possession" includes actual as well as constructive possession and also sole as well as joint possession.

A person who has direct physical control of something on or around his person is in actual possession of it.

A person who is not in actual possession but who has both the power and the *intention to later take control over something* either alone or together with someone else is in constructive possession of it.

If one person alone has possession of something, possession is sole. If two or more persons share possession, possession is joint.

(Emphasis added.)

Maghee contends that "the addition of the words 'intention to later take control over something' is without authority in Iowa law and that the inclusion of this phrase in" the instruction "infected the deliberations with prejudicial error." Maghee argues that he could not have had actual or constructive possession until Gress found the mixture acceptable after testing and that never occurred because of the premature arrests. He concludes that the inclusion of the words "intention to later take control over something" led the jury to believe it could find Maghee had possession of the cocaine mixture even if Maghee had not exercised actual or constructive possession. Maghee points out that "[a]lthough the instruction was tailored to fit the State's theory of prosecution,

no Iowa case has approved of such language nor ratified a theory of possession to encompass 'constructive possession' by intention to do something 'later' in the future."

The State contends that Maghee did not call the district court's attention to the argument he now makes to us. Because he did not alert the district court to the specific objection he now makes, the State argues that Maghee has waived error on this issue. We agree.

Our scope of review on objections to instructions is on assigned error. *State v. Hepperle*, 530 N.W.2d 735, 738 (Iowa 1995); Iowa R.App. P. 4.

Rules relating to civil jury instructions apply to criminal trials. Iowa R.Crim. P. 18(5)(f). Iowa Rule of Civil Procedure 196 governs civil jury instructions. Rule 196 requires all objections to be made and ruled upon before arguments to the jury. Within such time a party must object to the "giving or failing to give any instruction ... specifying the matter objected to and on what grounds. No other grounds or objections shall be asserted thereafter, or considered on appeal." Iowa R. Civ. P. 196.

Well-settled principles following the tenor of rule 196 govern our review of objections to instructions. We consider only those objections to instructions a party previously raised with the district court. *Hepperle*, 530 N.W.2d at 738. A party objecting to the court's instruction must specify the subject and grounds of the objection. *Id.* A party's objection must be sufficiently specific to alert the district court to the basis for the complaint so that if there is an error the court can correct it before submitting the case to the jury. *Id.* A party's general objection to an instruction preserves nothing for review. *Id.* Additionally, a party is bound by the objection the party makes to the district court's instructions and may not amplify or change the objection on appeal. *Id.*

Maghee objected to the instruction in question as follows:

> Your Honor, I'd object to the concept of possession in the marshaling instruction or possession with intent to deliver in Instruction No. 25 as it relates to con-

structive possession and object to the submission of Instruction No. 25 in that the evidence in this case is that Des Moines police officer Craig Hamilton took a suitcase full of what they claim to be cocaine and placed it in a room with Mr. Maghee and Mr. Gress. There's no evidence of Mr. Maghee handling or maintaining any dominion and control over the alleged cocaine, that as soon as the cocaine was left in the room, officer Hamilton exited the room, knocked on the door, crossed the hall, and let Des Moines police officers enter the room in which Mr. Gress and Mr. Maghee were located. There's insufficient evidence in the record to support the proposition as a matter of law that Mr. Maghee at any time possessed the controlled substance.

The objection is nothing more than a general one to the instruction. The objection did not alert the district court to Maghee's present contention that "intention to take control over something is without authority in Iowa law." Nor did the objection alert the court to the arguments Maghee now makes in support of that contention. Because counsel failed to so alert the district court, Maghee cannot now amplify the grounds for the objection at trial or assert the specific objection for the first time on appeal. Maghee's general objections failed to preserve error on his present contention.

Because Maghee's objection failed to preserve error, the challenged instruction—right or wrong—became the law of the case. *State v. Taggart*, 430 N.W.2d 423, 425 (Iowa 1988) ("Failure to timely object to an instruction not only waives the right to assert error on appeal, but also 'the instruction, right or wrong, becomes the law of the case.'") (citations omitted). In his objection to the challenged instruction, Maghee did not assert there was insufficient evidence to support the language he now claims was erroneous: "intention to later take control over something." It is too late to raise that objection now.

### V. *Sufficiency of the Evidence—Drug Tax Stamp Offense.*

The jury convicted Maghee of the drug tax stamp offense covered in count III of the

trial information. The offense has three elements:

1. The defendant was a dealer of a taxable substance.

2. The defendant did not pay the State excise tax imposed on dealers and obtain stamps, labels, or other official indicia of payment.

3. The defendant knowingly or intentionally possessed the taxable substance without affixing the appropriate stamps, labels, or other official indicia.

*See* Iowa Code § 453B.12. As to the third element, the law requires the dealer to affix the tax stamp on the taxable substance "immediately after receiving the taxable substance." *Id.* § 453B.3.

On appeal, Maghee makes three arguments to challenge his conviction for failure to affix a drug tax stamp. First, he contends there was insufficient evidence to support a finding that he failed to pay the tax. Second, he argues there was insufficient evidence to show he "possessed" any drugs. Last, he asserts there was insufficient evidence to generate a jury question on whether he had failed to immediately affix a drug tax stamp after receiving possession.

The State responds that Maghee preserved none of these arguments for our review.

In his motions for judgment of acquittal, Maghee made the following record on the drug tax stamp offense:

On the third issue of failure to possess a tax stamp, I submit that the record is totally devoid on that point. By testimony of law enforcement officers, they say, "We took something into the room"—" 'we' meaning Craig Hamilton—" "I took something into the room which had been prepared by the police to be cocaine." From the evidence seen and from the testimony of officer Hamilton and Kelly Evans saying there was no time for any person to purchase a tax stamp—that is, they walk in, drop off a suitcase. The suitcase has cocaine in it. There's no tax stamp on the cocaine. Officer Hamilton walks across the hall, opens the door. The police come in and arrest them in there, and they say,

"Well, you're in possession of cocaine, and there's no tax stamp on it. Therefore you're guilty of not having a tax stamp," when there's been no evidence in the record of Mr. Maghee or Mr. Gress ever picking up the suitcase or carrying it or doing anything to possess what's actually in there. The point being they arrested him too soon, and there certainly was no opportunity for any person to get a tax stamp by the testimony of the law enforcement officers. They say, "We don't have to have a tax stamp 'cause we're law enforcement officers. And we take it in there, and since there's no tax stamp on it, you're guilty of possessing it without having a tax stamp." That is, "We bring the substance. We don't put a tax stamp on it. It was totally in our control up to that point. We pop them, and therefore they're guilty of not having a tax stamp." I submit as a matter of law that's insufficient evidence.

 We see no suggestion in this motion that Maghee was contending there was a lack of evidence on whether he paid the tax. Maghee failed to object to this element in the marshalling instruction. He therefore preserved no error on this issue.

 Maghee did, however, contend generally that there was no evidence to show he ever possessed the cocaine. His argument was one of lack of actual possession: "[T]here's been no evidence in this record of Mr. Maghee or Mr. Gress ever picking up the suitcase or carrying it or doing anything to possess what's actually there." He therefore preserved error on his claim that there was no evidence to show he actually possessed the cocaine.

 Maghee also contended in the motion for judgment of acquittal that "there was no opportunity for any person to get a tax stamp." He therefore preserved error on his claim that there was a lack of evidence to generate a jury question on whether he had failed to immediately affix a drug tax stamp on the cocaine after receiving possession.

 When reviewing the propriety of a ruling denying a motion for judgment of acquittal, we view the evidence in the light

most favorable to the State, including all legitimate inferences and presumptions that may fairly and reasonably be deduced from the evidence. *State v. Padavich*, 536 N.W.2d 743, 751 (Iowa 1995). We will not disturb such a ruling, unless commission of the offense is not supported by substantial evidence. *Id.* Substantial evidence is that evidence that would convince a rational trier of fact that the defendant is guilty beyond a reasonable doubt. *Id.*

A. *Possession.* In *Padavich*, we approved the following definition of possession:

Possession can be actual or constructive and sole or joint.

The word "possession" includes actual as well as constructive possession, and also sole as well as joint possession.

A person who has direct physical control of something on or around [his][her] person is in actual possession of it.

A person who is not in actual possession, but who has knowledge of the presence of something and has the authority or right to maintain control of it either alone or together with someone else, is in constructive possession of it.

If one person alone has possession of something, possession is sole. If two or more persons share possession, possession is joint.

*Id.*

Additionally, we held that a "fact finder may infer constructive possession when the thing is found in a place which is subject to the defendant's dominion and control, or to the joint dominion and control of the defendant and other persons." *Id.*; *accord State v. Simpson*, 528 N.W.2d 627, 632 (Iowa 1995).

Viewing the evidence in the light most favorable to the state, we conclude there was substantial evidence that Maghee had constructive possession of the cocaine. The officers seized the cocaine in Maghee's room. Although officer Hamilton rented the room for him, Maghee had the key. Thus the evidence would support a reasonable inference that Maghee had dominion and control over the room where the cocaine was seized.

Additionally, there was substantial evidence that Maghee knew the suitcase contained cocaine. He was there to buy cocaine. When Hamilton left the room to get a knife so Gress could test the cocaine, the officer left the cocaine in Maghee's and Gress's joint possession. At that point the pair had the authority or right to maintain control of the cocaine. These facts are additional substantial evidence supporting our conclusion that Maghee had constructive possession of the cocaine or at the very least shared with Gress joint constructive possession of the cocaine.

B. *Failure to immediately affix drug tax stamp.* As to this issue, Maghee relies in part on his argument that the instruction defining constructive possession was erroneous in that the instruction used the language "intention to take control over something." More specifically, Maghee is contending that no obligation to affix drug tax stamps arises until the dealer possesses the "taxable substance." No such obligation arose here, Maghee argues, because he never had possession of the cocaine. In division IV we determined Maghee did not preserve error on this argument and that the instruction thereby became the law of the case.

We also determined in division V(A), that there was substantial evidence Maghee had constructive possession of the cocaine. Thus, Maghee's lack-of-possession argument must fail.

As to Maghee's contention that there was no opportunity to obtain a drug tax stamp, we have rejected similar arguments in two cases. In *State v. White*, 545 N.W.2d 552, 556 (Iowa 1996) (en banc), we defined "immediately" in section 453B.3 to mean "without delay" and does not include "within a reasonable time." Because the tax stamps may be purchased at any time and refunds may be obtained without any fear of reprisal, we held that there was no need for a window of opportunity to purchase and affix the tax stamps within a reasonable time following the transaction. *Id.*; *accord State v. Predka*, 555 N.W.2d 202, 215 (Iowa 1996). Thus, requiring that the tax stamps be affixed at the very time of acquisition does not make it

impossible to comply with the statute. *White,* 545 N.W.2d at 556; *accord Predka,* 555 N.W.2d at 215.

The evidence shows that Maghee had two days before the transaction to purchase the stamps. Before meeting Hamilton, Maghee could have purchased them. Maghee offered no reason why he could not have done so. *See Predka,* 555 N.W.2d at 215 (holding that district court properly excluded evidence that it was impossible for nonresident drug dealer to purchase drug tax stamps on a Saturday because before the trip to Iowa dealer should have arranged to acquire stamps before he picked up marijuana).

Maghee's lack of opportunity argument must likewise fail.

VI. *Weight of Mixture Versus Purity of Cocaine; Sufficiency of Evidence to Support Possession of More Than 500 Grams of Cocaine.*

Maghee's final contention presents a question of statutory interpretation. He contends that the statutory scheme under which he was charged required the State to prove he possessed more than 500 grams of pure cocaine. It was not enough to prove he possessed a mixture exceeding 500 grams that contained an unknown amount of pure cocaine. Because the evidence falls short of showing the mixture contained more than 500 grams of pure cocaine, Maghee also contends the evidence was insufficient to establish that he possessed more than 500 grams of cocaine.

■ A. *The statutory argument.* The statutory language under which Maghee was charged and convicted provides:

1. Except as authorized by this chapter, it is unlawful for any person to ... possess with the intent to ... deliver ... a controlled substance ... or conspire with one or more other persons to ... possess with the intent to ... deliver ... a controlled substance....

 . . . .

 b. Violation of this subsection with respect to the following controlled substances ... is a class "B" felony, and in addition to the provisions of section 902.9,

subsection 1 [confinement for no more than twenty-five years], shall be punished by a fine of not less than five thousand dollars, nor more than one hundred thousand dollars:

 . . . .

 (2) More than five hundred grams but not more than five kilograms of any of the following:

 (a) Coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed.

 (b) Cocaine, its salts, optical and geometric isomers, and salts of isomers.

 (c) Ecgonine, its derivative, their salts, isomers, and salts of isomers.

 (d) Any compound, mixture, or preparation which contains *any quantity of any of the substances referred to in subparagraph subdivisions (a) through (c).*

Iowa Code § 124.401(1)(*b*)(2).

The State argues the italicized language in subsection (d) is unambiguous: The amount of the controlled substance within the mixture is irrelevant; rather, it is the weight of the mixture that establishes the penalty, without regard to purity. Thus, for example, a person possessing a mixture of 500 grams of baking soda and one gram of cocaine is guilty of a Class "B" felony.

Not so, contends Maghee. Subdivision (d) simply means that the State must prove in excess of 500 grams of a combination of coca leaves and cocaine. He gives an example: "A person could be convicted of possession with intent to deliver in excess of 500 grams where the substance consisted of 400 grams of coca leaves and 150 grams of cocaine." Thus, according to Maghee, subdivision (d) merely recognizes the distinction between types of coca-cocaine substances.

Maghee attempts to back up his argument by pointing out that the more serious offense (class "B" felony carrying a 50–year sentence) requires the State to prove "more than five kilograms of a *mixture* or substance containing a *detectable amount* of any" cocaine. Iowa Code § 124.401(1)(*a*)(2) (emphasis added). The legislature omitted

the "mixture" with "detectable amount" language in the provision under which Maghee was convicted. Maghee argues this omission is significant: The legislature intended the purity of the controlled substance or substances in the mixture should dictate the penalty, not the weight of the mixture.

Although Maghee presents an intriguing argument, it is of no help to him here. Maghee did not preserve the issue for our review in his motion for judgment of acquittal. *See State v. Crone,* 545 N.W.2d 267, 270 (Iowa 1996) (holding defendant failed to preserve argument that evidence regarding "threat" or "anything of value" elements of extortion charge was insufficient to support conviction for extortion by not mentioning those elements in motion for judgment of acquittal). Again we turn our attention to Maghee's motion for judgment of acquittal:

> [As to all counts], I submit that in each of those, there's the concept that they've got to have a measurable amount of cocaine. They don't have it.... There's nothing in the record to establish what the purity of that cocaine was that was taken from the earlier cases. When they say 33 grams of cocaine, we don't know if that's 33 grams of cocaine or if it's actually one gram of cocaine. We don't know the purity of it, whether it's zero percent purity or 100 percent purity at 33 grams.... We don't know if that cocaine they used initially was 100 percent pure or one-thousandth of a percent pure.
>
> And where Kelly Evans says you've got to have a detectable amount and the state laboratory said something in excess of five grams, their rough calculation, they say, "We took 33 grams. We mixed it with enough stuff to make a total of 3000 grams. Then we divided it into three different bricks. Therefore we've got 11 grams in each" is an assumption on their part.... The record is devoid of there being measurable cocaine in each of the three kilogram bricks that they say exists. That it was incumbent upon the State to bring in expert testimony on the issue of there being a detectable amount of cocaine in each of the bricks, that their assumption is just that—an assumption, that it fails

because there is no determination of the purity of the cocaine originally used to mix with other matters to reach what they say is 3000 grams....

> So as a matter of law, because they cannot prove a detectable amount—that there was cocaine there—that adds to the propositions of failure to prove as a matter of law on the issue of possession of a controlled substance, cocaine, with the intent to deliver and failure to possess a tax stamp in Count III.

Maghee was arguing that the State had to prove a detectable amount of cocaine in each brick of the mixture. This is opposite from what he is arguing now: The statute in question required the State to prove there was more than 500 grams of pure cocaine in the mixture.

To support his argument to the district court, Maghee was merely asserting that the State had failed to prove the purity of the cocaine taken from earlier cases. We are at a loss as to the significance of this assertion, unless Maghee was arguing there was no evidence of any cocaine in each brick of the mixture sufficient to constitute a detectable amount.

In any event, the State and Maghee tried the case on the theory that the State had to prove there was a "detectable" amount of cocaine in each brick of the 3000 plus grams of mixture. The State produced substantial evidence of that fact. Officer Evans testified that he mixed 33 grams of cocaine taken from earlier cases with powdered sugar and flour to produce a 3000 plus gram mixture containing cocaine. Although the chemist could not determine the purity of the cocaine used in the mixture, he did testify that he "found cocaine to be present in each of the" three bricks of cocaine. The chemist went into great detail explaining the testing he did to make that determination. The testimony of both witnesses provided substantial evidence that there was a detectable amount of cocaine in each of the three bricks of the mixture.

■ B. *Possession of more than 500 grams of cocaine.* As mentioned, the parties tried the case on the theory that the State

had to prove a detectable amount of cocaine in each brick of the mixture. Thus, under this theory, the State was not required to prove Maghee possessed more than 500 grams of pure cocaine as Maghee contends. Rather, the State had only to prove that Maghee possessed three bricks of mixture each containing a detectable amount of cocaine. Substantial evidence of this fact flowed from the testimony of officer Evans and the state chemist.

## VII. *Postconviction Relief.*

Maghee filed a pro se brief listing 24 claimed errors requiring reversal of his conviction. His appellate counsel who was not trial counsel advises that he can find no basis to support some of the claims, some are addressed by this appeal, some have been decided adversely to Maghee by our prior cases, and some are moot. Counsel suggests the remainder of the claims should be preserved for postconviction relief based on Maghee's allegation of ineffective assistance of counsel. Our review of the claims leads us to conclude the following should be preserved for postconviction relief:

1. Appellant was denied due process by pretrial detention for the purpose of destroying favorable evidence.
2. Unconstitutional admission of surveillance tapes and videos.
3. Appellant was convicted on perjured testimony.
4. Appellant's Fifth Amendment rights were violated by the admission of the videotape of his arrest showing silence after the giving of *Miranda* rights.
5. Constitutional objections to the trial information.
6. False information in the trial information.
7. Prejudicial admission of prior bad act evidence.
8. Failure to present a different defense.
9. Denial of compulsory process.
10. Government misconduct in threatening witness/co-defendant, Anthony Gress.
11. Illegal search and seizure.

In this appeal, appellate counsel raised a constitutional vagueness challenge to Iowa Code section 453B.12. Contrary to counsel's contention, the issue was not preserved in the district court for our review. Appellate counsel does raise an ineffective of assistance of counsel claim in the event we find the issue was not preserved. In addition to the other claims mentioned, we preserve this claim for postconviction relief.

## VIII. *Disposition.*

In sum, we conclude the amendment neither (1) charged a wholly new and different offense nor (2) prejudiced Maghee's substantial rights. The district court therefore properly allowed the amendment. Accordingly, we affirm on this issue.

The district court committed no error when it submitted conspiracy. However, because conspiracy was an alternative means of violating Iowa Code section 124.401(1), the court could only sentence Maghee for conviction of a single offense, a violation of section 124.401(1). The court therefore committed error when it sentenced Maghee on the conspiracy count. The error requires us to vacate the sentence on the conspiracy conviction. The balance of the sentence stands.

Maghee preserved no error on his contention that the district court erred in defining constructive possession. We therefore affirm on this issue.

We conclude there was substantial evidence to support Maghee's conviction for failure to affix a drug tax stamp. We therefore affirm on this issue.

Maghee preserved no error on his contention that section 124.401(1)(*b*)(2) required the State to prove the mixture contained more than 500 grams of pure cocaine. The evidence was otherwise sufficient to support Maghee's conviction for violation of Iowa Code section 124.401(1). We therefore affirm on this issue.

We preserve for postconviction relief the numerous issues Maghee raises based on his claim of ineffective assistance of trial counsel, including the constitutional vagueness challenge to Iowa Code section 453B.12.

We affirm the judgment of convictions and sentences as modified.

**AFFIRMED AS MODIFIED.**