# IN THE COURT OF APPEALS OF IOWA

No. 16-0659
Filed February 22, 2017

**IN THE INTEREST OF S.B.,**
**Minor child,**

**S.B., Minor child,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Scott County, Christine Dalton Ploof, District Associate Judge.

A juvenile appeals from his delinquency adjudication, claiming it was not supported by sufficient evidence. **AFFIRMED IN PART AND REVERSED IN PART.**

Murray W. Bell, Bettendorf, for appellant.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Considered by Vaitheswaran, P.J., and Potterfield and Bower, JJ.

**POTTERFIELD, Judge.**

The juvenile, S.B., appeals his delinquency adjudication based on findings he committed the delinquent acts of serious injury by motor vehicle and possession of marijuana. He maintains there was insufficient evidence to support the court's findings.

**I. Background Facts and Proceedings.**

On March 28, 2015, fifteen-year-old S.B. was driving his parents' vehicle with two of his friends—also minors—as passengers. S.B. ultimately drove the car over a curb, and the vehicle hit a tree. One of the passengers, M.P., sustained serious injuries.[1] The other passenger, D.M., ran from the scene, while S.B. stayed with M.P.

Officer Shawn Claussen was dispatched to the scene of the accident at 10:46 p.m. After arriving, he approached a group of minors standing near the vehicle and asked who had been driving. S.B. admitted that he was the driver, and Officer Claussen began asking S.B. questions about the accident. While doing so, Officer Claussen formed the opinion S.B. had ingested marijuana. According to the officer, he could smell "an odor of freshly burnt marijuana that was coming from the vicinity of" S.B. Additionally, he noted S.B.'s "speech was kind of low and slow, and that his eyes were kind of red and his eyelids were droopy at that particular point in time." He then asked S.B. to walk away from the group to determine if the smell was coming from him as opposed to others in the

---

[1] M.P. testified he "had internal bleeding and . . . broke [his] back" in the crash. He had to undergo two surgeries—one to implant steel rods to stabilize his spine and another to remove approximately ten inches of his small intestine.

group. Once Officer Claussen determined the odor emanated from S.B., he placed S.B. under arrest and seated him in the back of the squad car.

Soon thereafter, medical personnel finished attending to M.P. and sought out S.B. to check him for medical injuries. While they asked him various questions for assessment purposes, S.B. admitted that he had ingested marijuana. He denied having used or taken any other drugs or substances. Although he did not complain of any injuries, because he was a minor, he was transported to the local hospital for further examination.

Still at the scene, Officer Zachary Schwarz located a bag of "what looked like marijuana" sitting on the middle of the backseat of the vehicle. He took possession of the bag and conducted a field test, which confirmed the substance was marijuana.

S.B.'s parents met him at the hospital. When Officer Claussen arrived, S.B.'s parents indicated that they did want the officer to speak with S.B. With S.B.'s father in the room, Claussen advised S.B. about implied consent and requested a sample of S.B.'s breath and urine. S.B. refused to provide either, and he indicated his refusal on the implied-consent form.

In September 2015, the State filed a delinquency petition, alleging S.B. had committed the violations of operating while intoxicated, serious injury by motor vehicle, and possession of a controlled substance (marijuana).

The adjudication hearing was held on January 20, 2016. Following the hearing, the court adjudicated S.B. delinquent after finding he had committed the violation of serious injury by motor vehicle and possession of marijuana. The

court found there was insufficient evidence to establish that S.B. had operated the vehicle while under the influence of marijuana.

S.B. filed a motion, entitled "motion in arrest of judgment and to set aside adjudication or alternatively grant a new trial." At the hearing on the motion, the State maintained that there was no rule in juvenile proceedings that allowed the filing of such a motion. The court ultimately held that the motion could be brought but denied it in its entirety.

The court later filed its dispositional order, placing S.B. on supervised probation with a number of conditions.

S.B. appeals.

## II. Standard of Review.

Delinquency proceedings are special proceedings that serve as an alternative to the criminal prosecution of a child, and we review them de novo. *In re A.K.*, 825 N.W.2d 46, 49 (Iowa 2013). "We presume the child is innocent of the charges, and the State has the burden of proving beyond a reasonable doubt that the juvenile committed the delinquent acts." *Id.*

## III. Discussion.

### A. Serious Injury by Motor Vehicle.

S.B. claims there is insufficient evidence to support the court's finding that he committed the delinquent act of reckless driving causing serious injury; he does not dispute that someone was seriously injured[2] in an accident while he

---

[2] Pursuant to section 702.18, a serious injury is defined, in part, as a "bodily injury" that creates a substantial risk of death, causes serious permanent disfigurement, or causes protracted loss or impairment of the function of any bodily member or organ.

was driving but claims the evidence does not support a finding that his actions rose to the level of recklessness.

Pursuant to Iowa Code section 232.2(12)(a), a delinquent act is "[t]he violation of any state law or local ordinance which would constitute a public offense if committed by an adult." Subsections 707.6A(4) and (2)(a) make it illegal to "unintentionally causes a serious injury" by "[d]riving a motor vehicle in a reckless manner with willful or wanton disregard for the safety of persons or property." "Reckless driving is composed of three elements (1) a conscious and intentional operation of a motor vehicle; (2) in a manner that creates an unreasonable risk of harm to others; (3) when this risk should have been known to the driver." *State v. Atwood*, 602 N.W.2d 775, 784 (Iowa 1999). "[F]or recklessness to exist the act must be fraught with a high degree of danger. In addition, the danger must be so obvious from the facts that the actor knows or should reasonably foresee that harm will probably—that is, more likely than not— flow from the act." *State v. Torres*, 495 N.W.2d 678, 681 (Iowa 1993). "In other words, a person acts recklessly when the person's actions are not merely unreasonable but 'highly' unreasonable; not merely a departure from ordinary care but an 'extreme' departure." *State v. Sutton*, 636 N.W.2d 107, 111 (Iowa 2001).

Here, the State provided evidence that S.B. had ingested some amount of marijuana at some point before driving. While driving under the influence is reckless in itself, the court dismissed the State's charge against S.B. that he was operating the vehicle while under the influence of marijuana due to "insufficient evidence." *See State v. Rohm*, 609 N.W.2d 504, 513 (Iowa 2000) ("Although

recklessness ordinarily involves a factual inquiry, some conduct itself may constitute recklessness. This is because the very nature of some activities are considered reckless due to the known, dangerous risks involved."); *State v. Massick*, 511 N.W.2d 384, 388–89 (Iowa 1994) ("[D]riving under the influence is certainly reckless behavior."); *see also State v. Dolman*, No. 01-1873, 2002 WL 31882998, at *3 (Iowa Ct. App. Dec. 30, 2002) (reversing defendant's conviction for reckless driving where there was insufficient evidence to find defendant was driving while under the influence at the time of the accident).

Other than the fact S.B. had ingested marijuana, the State seemed to rely on the mere fact the accident occurred to satisfy its burden of proving that S.B. was driving recklessly. We agree the record does not contain an explicit explanation for why S.B. failed to navigate the curve—the roads were dry, the bend in the road was slight, and there was no testimony as to other external issues, such as hazards on the road or other drivers, requiring S.B. to make evasive maneuvers. However, the fact an accident occurred only shows S.B. failed to maintain control of his vehicle—a separate offense. *See* Iowa Code § 321.888(1) ("A person operating a motor vehicle shall have the vehicle under control at all times."); *see also Stimmel v. Johnson*, 199 N.W.2d 356, 359 (Iowa 1972) ("It is, of course, true that lack of control may be charged both as a statutory violation and as common law negligence."). In other words, the State has not established S.B. was driving recklessly based on the fact that he hit the tree with the vehicle.

The State implied S.B.'s claims at the scene that he had been driving "about thirty miles per hour"—the speed limit—were not realistic for the amount

of damage to the vehicle and the extent of M.P.'s injuries, but the State did not provide any accident reconstructions or expert testimony as evidence that S.B. was driving at a higher rate of speed or that show what the rate of speed may have been.[3] Additionally, we note that S.B. was driving without a parent or other parent-approved adult and with more than one passenger; both are in violation of the rules regarding an instructional permit. *See* Iowa Code §§ 321.180B(1)(c)(1); .194(2)(a), (b)(1). But a violation of a rule of the road is not per se reckless. *See State v. Cox*, 500 N.W.2d 23, 26 (Iowa 1993) (rejecting the claim that the violation of Iowa Code section 321.322, requiring a driver to stop or yield at an intersection, was sufficient to find a driver was reckless).

The State has not presented sufficient evidence to prove beyond a reasonable doubt that S.B. was driving recklessly when the accident occurred.[4]

**B. Possession of Marijuana.**

S.B. claims there is insufficient evidence to support the court's finding that he was in possession of marijuana; he maintains the evidence at trial does not support that he had actual or constructive possession of the drug when it was found in the vehicle, which had two other occupants immediately before the drugs were confiscated.

---

[3] One of the paramedics testified, in passing, "[H]e was very, very calm for a kid that just hit a tree at 35 to 50 miles per hour." When asked about that answer later, the paramedic explained, "I would think he was at a substantial amount of speed due to the damage we observed upon arrival, yes." The paramedic did not testify as to any experience or training that would allow him to gauge the speed before impact with any level of certainty.

[4] S.B. also challenges the weight of the evidence to support this finding. The State maintains we should not consider this argument and offers three alternatives for its position, stating, "Such a claim cannot be raised in a juvenile delinquency proceeding. If it could, error was not preserved below. And finally, if error had been preserved below, the issue has been waived upon appeal." Because we find there is not sufficient evidence, we need not address this issue.

Pursuant to Iowa Code section 124.401(5), it is illegal "for any person [to] knowingly or intentionally . . . possess a controlled substance." Possession can be either actual or constructive. *State v. Cashen*, 666 N.W.2d 566, 569 (Iowa 2003). "A defendant has actual possession of the drugs if he or she has 'direct physical control' over the drugs." *Id.* (quoting *State v. Maghee*, 573 N.W.2d 1, 10 (Iowa 1997)). "Possession is constructive where the defendant has knowledge of the presence of the drugs 'and has actual authority or right to maintain control of [them].'" *Id.* (alteration in original) (quoting *Maghee*, 573 N.W.2d at 10). Here, it is clear S.B. did not have actual possession of the marijuana; it was not found on his person. *See id.* ("In the case before us, [the defendant] did not have actual possession of the marijuana. The officers did not find the marijuana on [the defendant's] person. Under these circumstances, the possession to be found, if any, must be constructive.").

To establish S.B. had constructive possession of the drugs, the State must establish: "(1) the accused exercised dominion and control over the contraband; (2) the accused had knowledge of the contraband's presence; and (3) the accused had knowledge the material was a narcotic." *See id.* (citing *State v. Reeves*, 209 N.W.2d 18, 21–22 (Iowa 1973)). In determining whether a defendant had constructive possession, we consider a number of factors, including, "incriminating statements made by the defendant, incriminating actions of the defendant upon the police's discovery of drugs among or near the defendant's personal belongings, the defendant's fingerprints on the packages containing drugs, and any other circumstances linking the defendant to the drugs." *Id.* at 571. "Even if some of these facts are present, we are still required

to determine whether all of the facts and circumstances, including those not listed above, allow a reasonable inference that the defendant knew of the drugs' presence and had control and dominion over the contraband." *Id.*

Here, we note that S.B. did not have exclusive access to the inside of the vehicle where the drugs were found because there were two passengers in his car at the time of the accident. *Id.* at 572 ("[P]ossession may be imputed when the contraband is found in a place which is *immediately and exclusively* accessible to the accused." (citation omitted)). Additionally, mere proximity is not enough to establish possession. *Id.* However, we believe the State has established that S.B. was in possession of the marijuana. First, at least two officers testified they were able to smell raw (or unburnt) marijuana in and around the vehicle when they arrived at the scene of the crash. Additionally, S.B.'s family owned the vehicle. *See id.* (considering whether the defendant was the owner of the vehicle when considering if possession of contraband had been established). At least one officer testified that he could smell burnt marijuana emanating from S.B., and S.B. later told the emergency medicine personnel that he had ingested marijuana before the accident occurred. There was not testimony from any of the officers or medical personnel involved indicating that marijuana could be smelled emanating from either of the passengers after the accident, and both of the passengers testified at trial that they had not known there was marijuana in the car and they did not ingest marijuana before the accident.

S.B. claims the facts here are similar to that of *Cashen*, where the supreme court determined there was not sufficient evidence to establish the

defendant had constructive possession of drugs found in a car with five passengers. *Id.* at 573. But in *Cashen*, the defendant was not the owner of the vehicle, another passenger in the vehicle had confessed to the drugs being theirs, and there was no evidence at the time of the traffic stop that the defendant had recently ingested the same drug. *Id.* at 568, 573.

There is sufficient evidence to support the juvenile court's finding that S.B. was in possession of marijuana, in violation of section 124.401(5).

## IV. Conclusion.

Because we find sufficient evidence supports the juvenile court's finding that S.B. was in possession of marijuana, we affirm the adjudication in part. Because there is insufficient evidence to establish beyond a reasonable doubt that S.B. was driving recklessly, we reverse the court's ruling that S.B. had caused serious bodily injury by motor vehicle.

**AFFIRMED IN PART AND REVERSED IN PART.**