# IN THE COURT OF APPEALS OF IOWA

No. 23-1178
Filed September 18, 2024

**STATE OF IOWA,**
　　　Plaintiff-Appellee,

**vs.**

**DANIELLE SHANTE WEINER,**
　　　Defendant-Appellant.
_____

　　　Appeal from the Iowa District Court for Delaware County, Michael J. Shubatt, Judge.

　　　A defendant appeals her conviction and sentence for second-degree murder. **AFFIRMED.**

　　　Chris Raker of Alliance Law Office, P.C., East Dubuque, Illinois, for appellant.

　　　Brenna Bird, Attorney General, and Kevin Cmelik, Assistant Attorney General, for appellee.

　　　Heard by Tabor, P.J., and Chicchelly and Sandy, JJ.

**SANDY, Judge.**

The State charged Danielle Weiner with first-degree murder after she shot and killed De'Von Hierrezuelo following an argument in her apartment in Ryan, Iowa. At trial, Weiner argued she acted in self-defense when she shot Hierrezuelo. The jury ultimately found her guilty of the lesser included offense of second-degree murder.

Weiner argues in this appeal that the district court committed reversible error when it submitted Iowa Code section 704.2B(2) as a jury instruction over her objection at trial. At trial Weiner argued that the instruction was confusing to the jury. Weiner also raises new arguments on appeal—that the instruction violates her federal constitutional rights against self-incrimination under the Fifth Amendment, as well as her federal and state constitutional due process rights under the Fifth and Fourteenth Amendments and article I, section 9 of the Iowa Constitution.

## I.     Backgrounds Facts and Proceedings

On February 8, 2021, Delaware County Deputy Sheriff Austin Zuercher responded to a dispatch call for shots fired at Belknap Apartments. The dispatch reported that a man had been shot in the face and that the shooter had fled the scene. Upon arriving at the scene, Zuercher could see that no one had fled the scene. There was freshly fallen snow and no tracks leading away from the apartment.

Zuercher entered a downstairs apartment and encountered Weiner standing in front of a deceased man with a bullet hole in his cheek. The man, later identified as Hierrezuelo, had his arms positioned above his head, his pants were

pulled down, and his coat pulled up.  Weiner told Zuercher she did not know who shot Hierrezuelo or where the shooter went but that the individual must have departed in a vehicle.  She did not admit that she was the shooter and did not claim that she acted in self-defense.  She only stated that she had heard an argument and did not know what happened.  She stated the shooter was a heavyset black male with dreadlocks, which is what she had reported in the 911 call as well.

Zuercher determined the scene needed to be cleared and followed Weiner to the bedroom where she gathered some items before stepping outside with her three children.  Zuercher then found a large pool of blood in the bedroom and bloody drag marks leading out of the bedroom into the hallway up to the position where Hierrezuelo laid.  He also noticed evidence that blood had been mopped up.  After seeing the bedroom, Zuercher asked Weiner where in the apartment Hierrezuelo had been shot.  She then admitted for the first time that he had been shot in the bedroom.  She did not mention being in possession of the murder weapon.  A holster and the gun's magazine were found during a search of the bedroom.

It was then decided that Weiner and her children should be transported to the police station to have their statements taken as it was much too cold to take statements outside the apartment.  Weiner and her children were placed in a police vehicle but were then asked to exit the vehicle so that a pat-down could be conducted.  Weiner exited and handed off her purse to one of her daughters, and Zuercher noticed the two daughters squirming in the back seat.  He had the daughters step out and found a gun hidden in a blanket under the youngest child, who was still seated in the vehicle's backseat.  There was blood on the weapon's

barrel and Weiner later admitted she owned the weapon. The bullet removed from Hierrezuelo during the autopsy matched all the "class characteristics" of a bullet fired from the type and model of gun recovered from Weiner. But the bullet removed from Hierrezuelo was too damaged to identify as being fired from her specific weapon. No tire tracks to or from the driveway and no footprints corroborating Weiner's report were found during an investigation of the apartment complex.

Weiner was interviewed by Iowa Division of Criminal Investigation agent Scott Reger. Weiner reported to Reger she was in bed that night and was startled by a loud noise, screamed, called 9-1-1, and asked for help from her children who were sleeping at that time. She then told Reger she wished to speak with her children and made a phone call to her mother and relayed to her to tell the children not to speak to law enforcement. She also made a call to her sister in which she revealed information that contradicted her story to police. She told her sister that Hierrezuelo had gotten her gun and had been, in turn, shot with it. She claimed to have chased the shooter from the house. She told her sister that she was not wearing her glasses and could only provide a general description of the assailant. She also claimed that her gun, used in the shooting, was in the safe but did not explain how that gun was removed from the safe and used in the shooting. At this point, she still had not mentioned any need or attempt to act in self-defense.

Reger saw that Weiner and her clothing were covered in blood. Since Weiner was claiming an unknown individual had committed the murder, Reger asked to swab the blood to see if the assailant's blood was on her. Weiner rejected this request and, when informed that Reger would be seeking a warrant, soon after

attempted to wash her hands in a nearby cup of water. Weiner had sustained no injuries.

That night Weiner was arrested on the charge of murder in the first degree, in violation of Iowa Code section 707.2 (2021). She pleaded not guilty and filed a notice of self-defense.

Weiner told a different story during her testimony at trial. She claimed that Hierrezuelo was violent and abusive, as were four other boyfriends she had in the past. She testified that both her and Hierrezuelo were in her car on the night of the shooting. She claimed they got into a fight and he threatened her, punched her, hit her multiple times, kneed her in the torso, and tackled her when she escaped the vehicle. From there, she ran into the apartment and he continued to beat her in her bedroom until she reached into the open safe to grab the firearm and fired a single shot.

At trial, a jury instruction was included which informed the jury how to weigh any failure to comply with Iowa Code section 704.2B(2). That statute prohibits destroying, altering, concealing, or disguising physical evidence, as well as inducing a person to alter their testimony. *Id.* Weiner objected to that instruction on the grounds that it was confusing, only applied to stand-your-ground defenses, and did not inform the jury exactly how to weigh the duties. The district court overruled that objection.

Following Weiner's testimony, both sides made their closing statements and the case was submitted to the jury. The jury convicted Weiner of murder in the second degree. She was sentenced to a term of imprisonment not to exceed fifty

years, with a mandatory minimum of thirty-five years to be served. She filed a timely notice of appeal. We now review.

## II.    Error Preservation

Weiner raises several new arguments on appeal—that the jury instruction she objected to at trial violates her federal constitutional right against self-incrimination under the Fifth Amendment, as well as her federal and state constitutional due process rights under the Fifth and Fourteenth Amendments and article I, section 9 of the Iowa Constitution.

"It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). "This general rule includes constitutional issues." *State v. Hernandez-Lopez*, 639 N.W.2d 226, 233 (Iowa 2002). "[I]t is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider." *Otterberg v. Farm Bureau Mut. Ins. Co.*, 696 N.W.2d 24, 28 (Iowa 2005) (citation omitted).

To preserve error, a party must object to a jury instruction in a manner which alerts the district court to the subject and grounds for the objection. *State v. Maghee*, 573 N.W.2d 1, 8 (Iowa 1997). "A party's objection must be sufficiently specific to alert the district court to the basis for the complaint so that if there is an error the court can correct it before submitting the case to the jury." *Id.* "[A] party is bound by the objection the party makes to the district court's instructions and may not amplify or change the objection on appeal." *Id.*

At trial, Weiner objected to jury instruction number 36 for several reasons. First, she argued that the instruction should be used only in a stand-your-ground

defense, which she was not arguing in this case. She does not advance this argument on appeal.[1] She also argued that the instruction doesn't give guidance "on how exactly the jury should consider any of the failed duties, and it can only be done to the detriment of the defense." She never raised any objection at trial on constitutional grounds and did not make any constitutional claims in her argument against the instruction in her motion for new trial and motion in arrest of judgment.

Weiner argues that error is preserved because the district court stated in relation to her objection that "I think you've made your record and preserved it for appeal." But the district court's statement related to the specific objections Weiner had brought before it. The district court could not be asserting that error was preserved on any conceivable claim she could potentially raise on appeal nor would such a statement preserve error on constitutional claims never raised at the trial level. Because Weiner failed to raise her constitutional arguments before the district court, she has not preserved error on those issues, and we will only address the objection she made at trial and renewed on appeal—the objection to instruction number 36 citing potential jury confusion in weighing the duties required under section 704.2B.

## III.     Standard of Review

"Challenges to jury instructions are reviewed for correction of errors at law." *State v. Gibbs,* 941 N.W.2d 888, 894 (Iowa 2020). "[W]e are slow to disapprove

---

[1] Even if Weiner had raised this argument on appeal, the instruction would not be limited to use in a stand-your-ground defense. "The [section 704.2B] reporting requirement—as carried forward in Instruction No. 36—applies to *any* assertion of the justification defense in a homicide case." *State v. Gibbs*, 941 N.W.2d 888, 900 (Iowa 2020).

of the uniform jury instructions." *State v. Booth-Harris*, 942 N.W.2d 562, 580 (Iowa 2020) (citation omitted).

## IV.    Discussion

At trial, Weiner argued that the use of jury instruction number 36 "is confusing for the jury because it doesn't give instructions on how exactly the jury should consider any of the failed duties, and it can only be done to the detriment of the defense.  So the defense's position is that the instruction should be removed in its entirety."

"Iowa law requires a court to give a requested jury instruction if it correctly states the applicable law and is not embodied in other instructions."  *Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 707 (Iowa 2016) (citation omitted).  "The court is not required to give any particular form of an instruction; rather, the court must merely give instructions that fairly state the law as applied to the facts of the case." *Booth-Harris*, 942 N.W.2d at 581 (cleaned up).

"As with any affirmative defense, the district court must instruct the jury on justification if substantial evidence supports the theory."  *State v. Kuhse*, 937 N.W.2d 622, 628 (Iowa 2020).  Jury instruction number 36 provided that:

> After using deadly force, the defendant had the following duties:
> 1. To not intentionally destroy, alter, conceal, or disguise physical evidence relating to the defendant's use of deadly force; and
> 2. To not intentionally induce another person to alter testimony about the defendant's use of deadly force.
>
> You may consider whether the defendant complied with these duties when deciding whether deadly force was justified.

This instruction directly recites the law as stated in section 704.2B(2) and Iowa Criminal Jury Instruction 400.7. Criminal Jury Instruction 400.1 requires that Instruction 400.7 be given if Instruction 400.1 is used.

Weiner does not argue that she complied with these duties or that, because of the instruction, the jury would draw an adverse inference from a lack of evidence of her compliance with section 704.2B(2). She only refers to the potential negative inferences the jury may draw from a failure to comply with the duties. She argues that the failed duties in instruction 400.7 could have only been used to her detriment. That assertion may be true, but the instruction is a correct statement of the law. If Weiner had complied with the duties, or there was a lack of evidence that she had failed to comply with the duties, the jury would have been just as free to draw inferences in her favor. Compliance with the duties outlined in the instruction actually encourages an inference that deadly force was justified. *See State v. Davis*, 988 N.W.2d 458, 467 (Iowa Ct. App. 2022) ("No inference adverse to [the defendant] can be reasonably drawn from the lack of evidence that he breached any of the enumerated duties of instruction [400.7]. To the contrary, compliance with these duties implies that deadly force was justified."). Weiner also does not argue that any part of the instruction is embodied in another instruction, and she did not renew her argument that the instruction is inapplicable to the facts of the case. *See supra* n.1.

Because the challenged instruction is a correct statement of law, applies to the facts here, and is not embodied elsewhere in the instructions, we affirm Weiner's conviction and sentence.

**AFFIRMED.**