# IN THE COURT OF APPEALS OF IOWA

No. 19-0775
Filed June 16, 2021

**STATE OF IOWA,**
       Plaintiff-Appellee,

**vs.**

**CARLOS ROIG GONZALEZ,**
       Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Bradley J. Harris, Judge.

Carlos Roig Gonzalez appeals his convictions for two counts of robbery in the first degree and one count of robbery in the second degree. **AFFIRMED.**

Timothy J. Tupper, Davenport, for appellant.

Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney General, for appellee.

Considered by Doyle, P.J., Schumacher, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**MAHAN, Senior Judge.**

Three Black Hawk County businesses were robbed over the course of a month in December 2017 and January 2018. Following an investigation, Carlos Roig Gonzalez was charged with the crimes, and he was convicted following two separate jury trials. On appeal, Roig Gonzalez challenges the severance of his charges and the sufficiency of the evidence to support the juries' verdicts, argues his speedy-trial rights were violated, and claims the district court abused its discretion in admitting evidence in his second trial. Facts will be set forth below as relevant to the issues raised.

## I.       *Sufficiency of the Evidence*

The jury found Roig Gonzalez guilty of two counts of robbery in the first degree (for robberies occurring at Kay Jewelers on January 22, 2018, and Dollar Tree on December 26, 2017) and one count of robbery in the second degree (for a robbery occurring at Sally's Beauty Supply on December 26, 2017).[1] The jury was instructed the State had to prove the following the elements of robbery in the first degree with regard to the Kay Jewelers robbery:

> 1. On or about the 22nd day of January, 2018, the defendant had the specific intent to commit a theft.
> 2. To carry out his intention or to assist him in escaping from the scene, with or without stolen property, the defendant:
>     A. Committed an assault on [A.W.] and/or [K.P.], or
>     B. Threatened [A.W.] and/or [K.P.] with, or purposely put [A.W.] and/or [K.P.] in fear of, immediate serious injury.
> 3. The defendant was armed with a dangerous weapon.

---

[1] Roig Gonzalez was also found guilty of assault during commission of a felony; that conviction merged with his Kay Jewelers robbery conviction.

The jury was instructed the State had to prove the following the elements of robbery in the first degree for the Dollar Tree robbery:

> 1. On or about the 26th day of December, 2017, the defendant had the specific intent to commit a theft.
> 2. To carry out his intention or to assist him in escaping from the scene, with or without the stolen property, the defendant:
>> A. Committed an assault on [M.C.] and/or [J.L.] or
>> B. Threatened [M.C.] and/or [J.L.] with, or purposely put [M.C.] and/or [J.L.] in fear of immediate serious injury.
> 3. The defendant was armed with a dangerous weapon.

The jury was instructed the State had to prove the following the elements of robbery in the second degree for the Sally's Beauty Store robbery:

> 1. On or about the 26th day of December, 2017, the defendant had the specific intent to commit a theft.
> 2. To carry out his intention or to assist him in escaping from the scene, with or without the stolen property, the defendant:
>> . . . .
>> B. Threatened [K.G.] and/or [L.M.] with, or purposely put [K.G.] and/or [L.M.] in fear of, immediate serious injury.

Roig Gonzalez challenges the sufficiency of the evidence to sustain his conviction for robbery in the first degree of Kay Jewelers, arguing the State failed to prove "the knife used was a dangerous weapon."[2] He further challenges the sufficiency of the evidence to sustain all his convictions based on insufficient

---

[2] Roig Gonzalez also raises this claim with regard to his conviction for robbery in the first degree of Dollar Tree. The State alleges Roig Gonzalez failed to preserve error on the dangerous-weapon issue with regard to the Dollar Tree robbery. We agree; counsel's motion for judgment of acquittal with regard to the Dollar Tree robbery was based only on identity and did not reference the dangerous-weapon element. *See State v. Clopton*, No. 19-1791, 2020 WL5229432, at *1 (Iowa Ct. App. Sept. 2, 2020) ("To preserve error on a claim of insufficient evidence, [the defendant] was required to make a motion for judgment of acquittal at trial that identified the specific grounds raised on appeal. Error is not preserved on a sufficiency-of-the-evidence issue when a defendant makes a 'motion for judgment of acquittal but fails to identify specific elements of the charge not supported by the evidence.'" (quoting *State v. Albright*, 925 N.W.2d 144, 150 (Iowa 2019)). Accordingly, Roig Gonzalez did not preserve error on that challenge.

evidence of identity. We review these claims for correction of legal error. *State v. Schiebout*, 944 N.W.2d 666, 670 (Iowa 2020). "We will uphold the verdict on a sufficiency-of-evidence claim if substantial evidence supports it." *Id.* "Evidence is substantial 'if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt.'" *Id.* (quoting *State v. Trane*, 934 N.W.2d 447, 455 (Iowa 2019)).

### A. Dangerous Weapon—Kay Jewelers robbery

The jury was instructed:

> A "dangerous weapon" is any device or instrument designed primarily for use in inflicting death or injury, and when used in its designed manner is capable of inflicting death. It is also any sort of instrument or device actually used in such a way as to indicate the user intended to inflict death or serious injury, and when so used is capable of inflicting death.

*See* Iowa Code § 702.7 (2018).

The knife used in the Kay Jewelers robbery was admitted into evidence at trial. An investigating officer testified about finding the knife in a closet at Roig Gonzalez's house. The officer described the "the blade part" of the knife as being "[a]pproximately 2 to 3 inches," and he opined the knife was "[a]bsolutely" "capable of inflicting death."[3] A.W. and K.P. were working at Kay Jewelers at the time of the robbery. A.W. testified Roig Gonzalez "entered the store with a knife held out with his arm extended toward [her]." She described the knife as a "hunting knife." Roig Gonzalez "had [A.W.] turn around and then he had put the knife to my left kidney and had the actual blade against [her] skin through [her] sweater." He said, "If you

---

[3] Indeed, Roig Gonzalez acknowledges "there was testimony that the knife seized by police . . . [that] the Defendant was using could kill someone."

follow what I say no one gets hurt." A.W., who was six months pregnant, "could feel [the knife] poke [her] skin." A.W. was "[e]xtremely" frightened and thought, "I'm going to die, and my baby's going to die."

In ruling on Roig Gonzalez's motion for judgment of acquittal on this basis, the district court found:

> Regarding the question as to whether the knife shown in the video and found would be considered a dangerous weapon, it is clear that a knife is a device or instrument designed primarily for the use of infliction of death or serious injury. Testimony was introduced that when used, that knife would be capable of causing death. The court finds that a jury question has been engendered regarding that as well. Therefore, the robbery-first will also be submitted.

Upon our review, we conclude substantial evidence supports the court's finding that the knife wielded by Roig Gonzalez could be considered a dangerous weapon. We affirm on this claim.

*B.     Identity*

Roig Gonzalez claims the State failed to provide sufficient evidence to establish he was the robber. To support his claim, he argues there were "significant discrepancies between the clothing worn at each robbery." The State responds, "Robbers can change clothes." In any event, we observe that all but one of the employees from the three stores who came in contact with Roig Gonzalez identified him—from a photo, at trial, or both—as the robber. All the employees described Roig Gonzalez as a smaller-statured male, wearing "black" clothing, who spoke with an accent. K.P. recognized Roig Gonzalez's voice and recalled she had helped him "a couple nights prior" when he came to Kay Jewelers "looking for an engagement ring." At that time, Roig Gonzalez told K.P. his name, which she wrote down on a "layaway slip" for an engagement ring and later

provided to police. During a search of Roig Gonzalez's person, police discovered a Kay Jewelers business card with K.P.'s name and pricing information for a ring. A search of Roig Gonzalez's house revealed stolen jewelry, knives matching those used in the robberies, and a mask identified as being worn in one of the robberies. And surveillance footage from the investigations showed Roig Gonzalez driving the same silver four-door car with a broken taillight that police found at his house.

The district court ruled on Roig Gonzalez's motion for judgment of acquittal on this claim as follows:

> Regarding the identification of the defendant [at the Kay Jewelers robbery], the store employee identified the defendant as the person who had been in two days earlier and that being the same person that was in the store committing what is alleged to have been a robbery. That identification is sufficient in the light most favorable to the State to engender a jury question. She based her decision both upon the voice of the person who was in the store, the mannerisms, the posture, the physical description, all of which are sufficient to bring about a jury question.
>
> . . . .
>
> [With regard to the Dollar Tree and Sally's Beauty store robberies] [t]hat there may be contradictory evidence, evidence that says that there is an accent or not an accent from the two scenes, the court again takes that in the light most favorable to the State that there is, in fact, an accent. That that was testified to that defendant in this case does have—does have an accent. There is that to tie.
>
> In addition, there is the fact that a vehicle is seen in the area of the Dollar Tree store. That vehicle is shown. That it possibly has a driver's side taillight that is broken. At the time that the defendant is arrested, he is driving a vehicle that also has a driver's side taillight that's broken.
>
> The individuals at Sally's had viewed a picture of Mr. Roig [Gonzalez], that they believed that that was the person that they had seen in the Dollar Tree. Although that was an individual picture, it does at this point provide some additional corroboration as to identity.
>
> The State has allowed the Kay Jewelers evidence or some of that to be admitted in this case. When you consider that with the fact that an individual who identified himself as Mr. Roig [Gonzalez] came in to the jewelry store, is shown on the video from December— excuse me, from January 2[2nd], I believe, and that the height,

stature, posture and the voice of that individual is similar to the person who is described by all of the incidents, the court finds that a jury question has been engendered, and the motion will be denied.

Upon our review, we concur in the district court's finding that the State presented sufficient evidence for the jury to determine Roig Gonzalez committed the three robberies. *See Schiebout*, 944 N.W.2d at 670.

## II. Speedy-Trial Rights

Roig Gonzalez contends the district court abused its discretion in denying his motion to dismiss for speedy-trial violation. "We review a district court's ruling on a motion to dismiss on speedy trial grounds for abuse of discretion." *State v. Taylor*, 881 N.W.2d 72, 76 (Iowa 2016). "When speedy trial grounds are at issue, . . . the discretion given to the district court narrows," *see State v. Winters*, 690 N.W.2d 903, 907 (Iowa 2005), and "relates to circumstances that provide good cause for delay of the trial." *See State v. Campbell*, 714 N.W.2d 622, 627 (Iowa 2006).

Roig Gonzalez claims the State failed to bring him to trial in violation of his speedy-trial rights under Iowa Rule of Criminal Procedure 2.33(2)(b), which provides, in relevant part:

> If a defendant indicted for a public offense has not waived the defendant's right to a speedy trial the defendant must be brought to trial within 90 days after indictment is found or the court must order the indictment to be dismissed unless good cause to the contrary be shown.

Iowa courts recognize three exceptions to the speedy-trial requirement: "(1) defendant's waiver of speedy trial, (2) delay attributable to the defendant, or (3) 'good cause' for the delay." *State v. Nelson*, 600 N.W.2d 598, 600 (Iowa 1999).

The State has the burden to prove one of the exceptions applies. *State v. Miller*, 637 N.W.2d 201, 204 (Iowa 2001). Here, the State presents "three reasons" for us to reject this claim, arguing Roig Gonzalez "orally waived speedy trial and did not re-demand it during the relevant time-frame"; "even if the oral waiver w[as] ineffective, defense counsel waived the right in later pleadings"; and "even if neither the oral waiver [n]or defense counsel's pleadings waived the right, there was good cause to set trial outside the 90 days."

The trial information was filed on February 8, 2018. On November 28, 2018, after accommodating various demands, waivers, and re-demands from Roig Gonzalez of his speedy-trial rights, as well as numerous requests for continuances and new counsel,[4] the district court entered an order rescheduling trial for February 12, 2019, "at the request of the Defendant." Thereafter, on January 4, 2019, Roig Gonzalez filed a pro se motion to dismiss "on speedy trial grounds," arguing "the State has failed to try [his] case within the ninety days" of his "restart" of demand to speedy trial that "occurred on October 5, 2018." Counsel then filed a motion to dismiss on behalf of Roig Gonzalez, raising similar claims. Following a hearing, the district court denied the motion. Roig Gonzalez challenges the court's ruling.

We observe that the October 5, 2018 hearing was scheduled in response the Roig Gonzalez's pro se requests for new counsel to replace his "sixth attorney."

---

[4] The parties list these various pleadings and orders in their briefs. We have thoroughly reviewed the record, and we decline to recite the extensive procedural history.

The district court engaged in the following colloquy with Roig Gonzalez at that hearing:

> COURT: Do you understand—are you asking that I appoint new counsel?
>
> ROIG GONZALEZ: Yeah, and I would be willing to start speedy trial all over, if that's what it takes.
>
> COURT: So at this point you would waive your right to a speedy trial at this time on all counts and ask for a new attorney to be appointed?
>
> ROIG GONZALEZ: Yes, sir.
>
> COURT: And have there been any threats or promises to get you to waive speedy trial at this time?
>
> ROIG GONZALEZ: No, sir.
>
> COURT: And are you doing that on your own free will?
>
> ROIG GONZALEZ: Yes, sir.
>
> COURT: Are you under the influence of any medicine, alcohol, or drugs at this time?
>
> ROIG GONZALEZ: None whatsoever.
>
> COURT: What I'm gonna do is I'm gonna appoint new counsel in this matter. I'm gonna have this thing set down the road. It will probably be, again, at least another 60 days to get somebody involved that can step in and handle this case, and we'll proceed in that manner. Anything further on behalf of the State?
>
> STATE: Your Honor, the State would request that a written waiver of speedy trial also be filed in addition to the court's order, just so there is something else documenting that as well. . . .
>
> COURT: I'll have his new attorney do that when I appoint someone new. . . .
>
> Anything further, sir?
>
> ROIG GONZALEZ: A question, if I may. I've been reading a little bit of law, and it says that I have a certain time limit to file specific motions, pretrial motions. Is that effective still?
>
> COURT: At this point what I'll do is I will extend that time to file pretrial motions to give your new attorney time to do that. All right?
>
> ROIG GONZALEZ: Okay.
>
> COURT: That's all. Thank you.

Thereafter, the court entered an order on October 10, 2018, stating in relevant part:

> This case is continued for trial at the request of the Defendant. Jury Trial is scheduled on the 27th day of November, 2018 at 9:00 A.M. . . .

This case is continued for the following reason[:] New Counsel appointed.

Speedy trial has been waived.

Allan Richards relieved of duties in this matter. Brian Johnson is appointed to represent defendant at state expense. Defendant waived his right to speedy trial on the record. Defendant shall file written waiver of speedy trial.

Attorney Johnson entered his appearance the following day. On November 16, 2018, defense counsel, on behalf of Roig Gonzalez, filed a motion to continue, noting a scheduling conflict he had with the trial date and stating that "depositions still need to be completed." Defense counsel stated, "Defendant previously waived his right to a speedy trial on record. The [c]ourt ordered that a written waiver be filed. . . . The [u]ndersigned will get a written waiver on file as soon as possible." Defense counsel requested "the matter be reset to the next available trial and pretrial date to get the written waiver on file." The district court thereafter entered an order setting trial for February 12, 2019, "at the request of the Defendant." Prior to trial, Roig Gonzalez filed his motion to dismiss.

"In order to show waiver, there must be a showing of 'an intentional relinquishment or abandonment of a known right or privilege.'" *State v. Taylor*, 881 N.W.2d 72, 78 (Iowa 2016) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). "[T]o waive speedy trial rights, the defendant must do so knowingly and intelligently." *Id.* at 79. Upon our review of the facts and circumstances, we conclude the "required showing [wa]s made" in this case. *See id.* Roig Gonzalez "was expressly informed of his speedy-trial right and agreed to waive it so he could await [appointment of new counsel]." *Cf. Hildreth v. State*, No. 16-1174, 2018 WL 542617, at *4 (Iowa Ct. App. Jan. 24, 2018) (concluding that because the defendant's waiver of speedy-trial right was voluntary, his counsel did not breach

a duty in failing to raise this claim). In other words, Roig Gonzalez "could have been tried within ninety days, but he knowingly waived the right," as he had done previously in this case.[5] *See id.*; *see also Taylor*, 881 N.W.2d at 79 ("[I]ntensive use of the extended schedule for purposes of trial preparation may suggest a waiver of speedy trial rights."). We find Roig Gonzalez's intentional statements to the court indicate he did not "mere[ly] acquiesce[]" his right to speedy trial. *Cf. Taylor*, 881 N.W.2d at 80 ("Mere acquiescence of the right is not sufficient."). Moreover, defense counsel's statements in the November 16, 2018 motion to continue also amounted to a waiver of Roig Gonzalez's speedy-trial rights. *See State v. LeFlore*, 308 N.W.2d 39, 41 (Iowa 1981) ("Defense counsel acting within the scope of his or her authority may waive this right on the defendant's behalf without the defendant's express consent. In the present case defense counsel expressly waived defendant's right to a speedy trial; counsel also waived this right by the succession of continuance motions."); *State v. Meyer*, No. 14-0661, 2015 WL 408112, at *2 (Iowa Ct. App. Jan. 28, 2015) ("In making the representation to the district court that a written waiver would be filed, [defense counsel] was acting within the scope of his authority as Meyer's counsel. Therefore, his statements operated as a waiver of Meyer's speedy trial rights."). Because we conclude the speedy-trial requirement was waived, we need not reach the good-cause exception. We affirm on this issue.

---

[5] Specifically, a hearing took place on August 16, 2018, in response to Roig Gonzalez's pro se request to have his attorney "withdraw[] from [his] case immediately," during which Roig Gonzalez appeared before the court, reiterated his desire for new counsel, and agreed to "start the 90 days over again," effective August 16, 2018, if the court were to grant his request for new counsel. The district court did so and rescheduled for October 10, 2018.

### III.    *Evidence of Other Crimes*

Roig Gonzalez contends the district court abused its discretion in admitting evidence of the Kay Jewelers robbery during his subsequent trial for the Dollar Tree and Sally's Beauty Supply robberies.  Specifically, he challenges the admission of testimony from R.I., a Kay Jewelers store manager, and investigating officers Ryan Bellis and Christopher Gergen.  "We review rulings on the admission of evidence of prior bad acts for an abuse of discretion."  *State v. Goodson*, 958 N.W.2d 791, 798 (Iowa 2021).  "We reverse a district court's admission as an abuse of discretion if the grounds or reasoning for admission were 'clearly untenable or clearly unreasonable.'"  *Id.* (quoting *State v. Plain*, 898 N.W.2d 801, 811 (Iowa 2017)).

Our rules of evidence provide "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Iowa R. Evid. 5.404(b)(1).  However, evidence of a crime, wrong, or other act, "may be admissible for another purpose such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Iowa R. Evid. 5.404(b)(2).  Our supreme court has delineated a three-step analysis in determining whether prior-bad-acts evidence is admissible under rule 5.404(b)(2):

> (1) "the evidence must be relevant and material to a *legitimate* issue in the case other than a general propensity to commit wrongful acts"; (2) "there must be clear proof the individual against whom the evidence is offered committed the bad act or crime"; and (3) if the first two prongs are satisfied, "the court must then decide if [the evidence's] probative value is substantially outweighed by the danger of unfair prejudice to the defendant."

*Goodson*, 958 N.W.2d at 799–800 (alteration in original) (quoting *State v. Richards*, 879 N.W.2d 140, 145 (Iowa 2016)).

In addressing Roig Gonzalez's objection to the admission of evidence relating to the Kay Jewelers robbery, the district court determined:

> At this point in the trial it is my understanding that the State is intending to present evidence regarding an incident that occurred at Kay Jewelers on January 22d of 2018. The court has previously made a determination that—that there is clear evidence that that previous incident occurred, that the defendant committed that, and the court finds that the probative value of that—of some of that evidence is outweighed [by] the prejudice to the defendant.
> . . . [T]he court tried that case last week, so the court is aware of the evidence that came in in the Kay Jewelers case as well as the evidence that's been presented in this case. The court finds that the similarity would be the evidence of the height of the individual involved, the dark clothing that was worn . . . . So the clothing involved is the same, the fact that a knife was involved, that pepper spray was involved in the incidents. It is my understanding that there will be evidence yet presented concerning the—the Dollar Tree regarding a vehicle with a taillight . . . . And that evidence is also similar to the Kay Jewelers.
> So for those reasons the court finds the clear evidence and that the probative value will outweigh the prejudice to allow some testimony or some evidence regarding the Kay Jewelers [robbery].

The district court then asked questions to narrow the evidence to that concerning common identity, and the court excluded certain evidence, including testimony from Kay Jewelers employees A.W. and K.P. "regarding their feelings, whether they were in fear," finding "those kind of matters are irrelevant as to identity." The court also limited external surveillance video footage to that involving the common vehicle used in the incidents, and specifically, showing the vehicle's broken taillight.

Turning to the evidence challenged by Roig Gonzalez, R.I. testified that she worked as store manager for Kay Jewelers, and that surveillance video of the store

was recorded on January 20 and 22, 2018. According to R.I., the January 20 video showed "a specific timeframe . . . where a particular guest visited our store and had—highlights the entirety of his trip inside the store," and the January 22 video depicted an "incident" that occurred inside the store on that day. Those videos were admitted without objection from defense counsel.

Officer Bellis testified with regard to his investigation of the Dollar Tree robbery, during which the store manager "described the suspect as a shorter white male wearing black gray joggers, black Nike shoes, a black puffy coat with a hood pulled up and zipped up just under his nose and a dark hat pulled down pulled over just above his eyes," who spoke with "what he believed was a Mexican accent." Officer Bellis testified he soon learned about the Sally's Beauty Supply robbery that took place the same evening, and he believed "[t]he similarities [of the suspect] were almost identical." When Officer Bellis learned about the Kay Jewelers robbery the following month, he discovered "[a]gain, [the suspect was described as] a shorter male dressed in all black with an accent having the same items, a knife and mace." He then retrieved external surveillance video taken from Target (located next to Kay Jewelers) on January 22, which showed "a four-door silver gray vehicle with a broken driver's side taillight" in the parking lot and the "suspect" leaving the vehicle and returning with "two white bags consistent with what Kay Jewelers employees said that he put all the jewelry into." Officer Bellis found a surveillance video from Scheels depicting similar evidence and testified his investigation revealed Roig Gonzalez had access to "a small silver four-door Saturn with a broken driver's side taillight" that was "registered" to a female who lived with him and the vehicle was found at Roig Gonzalez's house. When police

pinpointed that vehicle to Roig Gonzalez during the Kay Jewelers' investigation, they circled back to retrieve surveillance videos from a bank in close proximity to Dollar Tree, which captured the same vehicle and "consistent" suspect walking into the store on December 27, as well as surveillance video of the vehicle traveling a route between Sally's Beauty Supply and Dollar Tree during the relevant time frame of the robberies. The surveillance videos were admitted without objection from defense counsel.

Officer Gergen testified about his investigation of the Sally's Beauty Supply robbery, during which he compared a surveillance video from Pita Pit (located next to Sally's Beauty Supply) and the Kay Jewelers surveillance video, because "the person in the video matched the description of who I was looking for at the Sally's Beauty, and they all had similar clothing in all those videos." Officer Gergen testified he concluded the person was the same in the videos based on "the consistent height, general body description, different types of facial features such as, you know, facial hair," and "[t]here were several items of clothing that matched the different videos." Officers Gergen and Bellis also testified that knives and clothing matching the description of those used during the robberies were discovered upon a search of Roig Gonzalez's house following the Kay Jewelers robbery.

Upon our review, we find no abuse of discretion in the court's ruling to allow the challenged evidence, as the prior acts are "strikingly similar" to the subject offense and tailored to specific evidence of identity. *State v. Putman*, 848 N.W.2d 1, 11–12 (Iowa 2014) (noting this standard "requires drawing out and comparing the peculiar circumstances of the acts"); *State v. Reyes*, 744 N.W.2d 95, 100 (Iowa

2008) ("The evidence elicited at trial concerning the prior [bad act] was concise, direct, and noninflamatory, and of a nature similar to that in the underlying charge."); *cf. State v. Frederick*, No. 18-2082, 2019 WL 6358437, at *3 (Iowa Ct. App. Nov. 27, 2019). Moreover, insofar as the challenged evidence went to further the State's case regarding Roig Gonzalez's identity as the robber, Roig Gonzalez does not challenge the testimony of Kay Jewelers employees A.W. and K.P., which provided the same—and arguably more definitive—identification evidence.[6] *Cf. State v. Duncan*, 710 N.W.2d 34, 45 (Iowa 2006) ("[T]he testimony was cumulative because other witnesses had already given similar testimony without objection. (citations omitted)). As to Roig Gonzalez's contention regarding "the unreliability of the eyewitness evidence," we conclude "that direct testimony from the victim[s] of a prior alleged [robbery], as a matter of law, is sufficient 'clear proof.'" *See Reyes*, 744 N.W.2d at 101.

We further note the parties agreed to the court's providing the following cautionary instruction to the jury:

> Ladies and gentlemen, you are about to receive evidence of an incident that occurred at Kay Jewelers in Cedar Falls, Iowa, on January 22, 2018. The defendant is not on trial for this incident.
> This evidence can be used only to show the identity of the person charged in the offense now on trial.
> You must first determine if the incident at Kay Jewelers occurred and if the defendant committed the act. If you find by clear evidence that the defendant committed the act at Kay Jewelers, the evidence may be considered to determine the identity of the individual committing the acts now on trial. In determining the weight to give this evidence, you may consider whether the incident at Kay

---

[6] Specifically, Roig Gonzalez does not challenge the admission of testimony from A.W. and K.P. regarding the identity of the Kay Jewelers robber, including K.P.'s testimony that she recognized the robber as being the same person who had visited the store on January 20, identified himself as "Carlos Roig," and put a ring on layaway.

> Jewelers and the present offenses for which the defendant are now on trial are so closely connected in time and were committed in the same or similar manner so as to form a reasonable connection between them.
>
>   This instruction will be given to you at the end when you get your instructions at the end, so you'll have a chance to review it at that time.[7]

"We presume juries follow the court's instructions." *State v. Bynum*, No. 18-0294, 2019 WL 1934463, at *5 n.4 (Iowa Ct. App. May 1, 2019); *see also State v. Reyes*, 744 N.W.2d 95, 98 (Iowa 2008) ("Counsel for [the defendant] did not object to this prior bad acts instruction."). "Cautionary instructions are sufficient to mitigate the prejudicial impact of inadmissible evidence 'in all but the most extreme cases.'" *Plain*, 898 N.W.2d at 815 (citations omitted). This is not one of those extreme cases. We affirm on this issue.

## IV. *Severance*

The trial information charged Roig Gonzalez with two counts of robbery in the first degree (Count I and Count II), one count of robbery in the second degree (Count III), and one count of assault while participating in a felony (Count IV). None of the counts referenced a specific robbery but instead alleged the following date range for the crime: "The said CARLOS A. ROIG GONZALEZ between the 26th day of December, 2017 and the 22nd day of January, 2018, in Black Hawk County, Iowa did: [commit the respective crime]."

Roig Gonzalez filed a motion to sever the charges, which the State resisted. Following a hearing, the district court entered an order granting the motion to sever Count III from Counts I and II, noting:

---

[7] The court later provided a similar instruction in the jury's written instructions.

> Defendant is charged in Count I, robbery in the first degree for an offense which is alleged to have occurred at Sally's Beauty Supply commencing at approximately 7:10 p.m. on December 26, 2017; Count II, robbery in the first degree alleged to have occurred at the Dollar Tree store commencing at approximately 7:40 p.m. on December 26, 2017; Count III, robbery in the second degree alleged to have occurred at Kay Jewelers commencing at approximately 8:20 p.m. on January 22, 2018; and Count IV, assault while participating in a felony alleged to have occurred on December 26, 2017, and January 22, 2018.

The court determined:

> [T]he robbery charged in Count III which is alleged to have occurred on January 22, 2018, must be severed from those robberies charged in Count I and Count II of the trial information alleged to have occurred on December 26, 2017. The court further determines that those offenses charged in Count I and Count II which are alleged to have occurred on December 26, 2017, do show a common scheme or plan given that the offenses occurred within 30 minutes of each other at locations which would require the defendant to drive for a considerable portion of this time.

The court instructed the State to select "either . . . the December 26, 2017, date or the January 22, 2018, date for the purposes of Count IV charged in the trial information."

The State decided it would proceed to trial first on the charges for the Kay Jewelers robbery and assault while participating in a felony. But prior to commencement of trial, the State brought to the court's attention that it had been "incorrect" that it was proceeding "under Counts III and IV," because Roig Gonzalez had been charged with first-degree robbery for the Kay Jewelers incident and Count III was charged as second-degree robbery. The State explained:

> We had talked about this. That was always our understanding between defense counsel that this would be a robbery first and then the assault while participating in a felony would be along with that.
> I charged the whole date range from all three of the incidents, so I was just intending on only saying the date for the Kay's Jewelers

for both of the counts and also reading them as Counts I and II and not II and IV or I and IV or anything like that.

The State further clarified, "The other robbery first would be the Dollar Tree and the robbery second is the Sally's Beauty robbery."

The court observed it had severed the charges based on the timing of the robberies, but it "is confusing because the trial information didn't list the victim and listed the range of dates in all of those." Defense counsel then acknowledged, "If the court recalls, when we were back in chambers, I believe on last Friday, I think I even specifically referred to this as being a robbery two and was, and was essentially corrected and I think that's where the confusion came from."[8] Defense counsel further stated, "But there's no doubt that everybody here was planning on going into this trial as, as the Kay Jewelers robbery. There's zero doubt about that,"[9] but he requested the court to "proceed as a robbery two on the Kay Jewelers robbery due to the motion to sever and due to my understanding of what my client understood." The court then allowed time for Roig Gonzalez to confer with defense counsel "regarding the plea offers given the situation." When the parties reconvened, Roig Gonzalez maintained his rejection of the State's plea offer but was "potentially willing to continue the matter to next week." The court then stated:

> [I]t is clear from the court's ruling on the motion to sever that it was the court's intention to sever out those cases which—or that case which occurred on, on a later date. That case the—was a robbery first that occurred on another date. That's the clear, the clear intent of the court's ruling. The first two alleged robberies occurred on, on similar dates or close, close to each other and the other one was

---

[8] Defense counsel further stated, "I will state that the State had notified on Friday that they were proceeding with this as a robbery one. So today I cannot say is the first day that this is—that this has been brought to our attention . . . ."

[9] Indeed, Roig Gonzalez does not challenge the court's decision to sever the Kay Jewelers robbery from Dollar Tree and Sally's Beauty Store robberies.

nearly a month later. Therefore, we—the, the charge which is in front of us today is a robbery first charge at the Kay Jewelers, despite the fact that it has been mislabeled by the court in its ruling.

The court understands the defendant's position that that is not the case that he believed he was going to trial on, believing it was a robbery in the second degree. We will proceed with the robbery in the first degree, the Kay Jewelers robbery, and an assault while participating in a forcible felony. If the defendant requests a continuance based upon that, the court will grant a continuance and we'll, we'll consider this a mistrial and we'll, we'll begin with this trial again on Tuesday.

The court then recessed again to allow Roig Gonzalez to confer with defense counsel. The following colloquy then took place:

DEFENSE COUNSEL: [W]e're prepared to proceed. Our request would be to proceed as a robbery second. If the court refuses to do so and wants to proceed as a robbery one, my understanding is, at least, that Mr. Roig Gonzalez would wish to go to trial today, but we would certainly ask that that issue be preserved for appeal.

COURT: . . . [T]he State argues regarding this case was originally charged as a robbery one. . . .

. . . .

At this time it is clear that the defendant intended or knew that he was proceeding on the Kay Jewelers robbery. He was aware that that robbery, from discussions, the court—the State considered to be a robbery in the first degree. We will proceed with Kay Jewelers as a robbery in the first degree case.

Again, if this, if the defendant believes that he is prejudiced in that regard, needs additional time and would request a mistrial on this matter, the court would grant that mistrial based upon this confusion and allow the defendant to begin trial again in this matter on Tuesday.

[Defense counsel], do you wish to proceed to trial at this time or do you want to wait and pick—and start this case again on the Kay Jewelers trial on Tuesday?

[Court again recessed to allow Roig Gonzalez and defense counsel to confer and research the issue.]

DEFENSE COUNSEL: . . . [W]e are comfortable with proceeding with trial today with the jury that we have previously selected on the Kay Jewelers alleged robbery. Obviously, as I stated before going off on recess, that essentially we wanted to make sure that this would not waive Mr. Roig Gonzalez's ability to preserve error on this for appeal purposes.

. . . .

Obviously, we are not making an express waiver of any kind of appeal issues on this case, and I think we're pretty clearly, from the record we've made, there's no implicit waiver either. So after speaking about that with Mr. Roig Gonzalez, we're comfortable proceeding today.

COURT: Any record you wish to make?

STATE: Not on that issue, Your Honor.

COURT: The State's—court's ruling that we will proceed at this time on a robbery in the first degree, that being the Kay Jewelers robbery, which is alleged to have occurred on January 22nd, 2018, stands. That is the matter we will proceed on.

The court determines that the defendant is not prejudiced in this matter. That all of the facts which the State intends—or evidence which the State intends to rely upon in this matter have been provided to the defendant. The defendant was aware that this was a robbery in the first degree. Although there may have been some confusion, that was certainly the discussion in chambers prior to beginning this matter and, therefore, the evidence in this case. There's no undue surprise to the defendant. So the court's ruling that we'll proceed stands.

On appeal, Roig Gonzalez claims the court erred in "allow[ing] the State to proceed with Kay's Jewelry robbery as a Robbery 1st degree over objection by the defense," which "clearly prejudice[d] [his] rights." Upon our review of the record set forth above, we find Roig Gonzalez's claim to be unpersuasive. It is clear Roig Gonzalez understood the Kay Jewelers robbery was to be tried first;[10] accordingly, he would have been prepared to defend against that incident and his trial strategy would have been established. *Cf. State v. Doorenbos*, No. 19-1257, 2020 WL 3264408, at *8 (Iowa Ct. App. June 17, 2020) (observing that an amended charge "prejudices the substantial rights of the defendant if it creates such a surprise that the defendant would have to change trial strategy" (quoting *State v. McGhee*, 573 N.W.2d 1, 6 (Iowa 1997)). Moreover, "[t]he continuance offered [Roig Gonzalez]

---

[10] At the pretrial hearing on August 16, 2018, defense counsel indicated Roig Gonzalez was "upset that Count III is going to trial first, not [Counts] I and II."

the opportunity to overcome the surprise [he] confronted at trial." *See Whitley v. C.R. Pharmacy Serv., Inc.*, 816 N.W.2d 378, 389 (Iowa 2012) ("Generally, a continuance is considered to be the 'traditionally appropriate remedy' for a claim of surprise at trial." (citation omitted)); *State v. Schertz,* 330 N.W.2d 1, 2 (Iowa 1983).

> Based on the circumstances existing at the time the decision was made, the trial court pursued a reasonable course of action. Importantly, [Roig Gonzalez] did not subsequently request any further relief from the trial court based on a claim that the continuance was inadequate. . . . Consequently, [Roig Gonzalez] waived any further claim of error by failing to make a further objection. A litigant cannot sit on a claim of error until the trial is over and make the claim once the result of the trial is unsatisfactory.

*Whitley*, 816 N.W.2d at 389–90 (internal citations omitted). We affirm on this issue.

Upon consideration of the issues raised on appeal,[11] we affirm Roig Gonzalez's convictions for two counts of robbery in the first degree and one count of robbery in the second degree.

**AFFIRMED.**

---

[11] Roig Gonzalez also filed a pro se supplemental brief, "adopt[ing] counsel's facts" and "claim[s] for relief," despite Iowa Code section 814.6A(1) (Supp. 2019), which provides: "A defendant who is currently represented by counsel shall not file any pro se document, including a brief, reply brief, or motion, in any Iowa court. *The court shall not consider, and opposing counsel shall not respond to, such pro se filings.*" (Emphasis added.) Section 814.6A became effective on July 1, 2019, prior to the filing of Roig Gonzalez's pro se supplemental brief, and therefore precludes us from considering it. *See State v. Thompson*, 954 N.W.2d 402, 419 (Iowa 2021) (rejecting various challenges to section 814.6A and directing the clerk of the supreme court "to strike the pro se supplemental brief").