STATE of Iowa, Appellee,

v.

Scott WILLIAMS, Appellant.

No. 63199.

Supreme Court of Iowa.

May 13, 1981.

Michael R. Hyzer of Rosenberg & Margulies, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Lona A. Hansen, Asst. Atty. Gen. and Jared O. Bauch, Tama County Atty., for appellee.

Considered by REYNOLDSON, C. J., and UHLENHOPP, HARRIS, ALLBEE and LARSON, JJ.

LARSON, Justice.

The defendant, Scott Williams, was charged in three counts of a county attorney's information with (1) possession of a

controlled substance with intent to deliver it for profit, (2) delivery of it for profit, and (3) conspiracy to manufacture, deliver or possess with intent to deliver it, all under section 204.401(1)(a), The Code 1977. The case was tried to the court and Williams was found guilty under all counts. On appeal he contends the trial court erred (1) in permitting an amendment to the information to charge conspiracy to commit the offenses; (2) in admitting hearsay testimony; (3) in allowing testimony of a deputy sheriff on the value of the marijuana; (4) in admitting evidence seized from his residence; (5) in sentencing him under all three counts; and (6) "under all the circumstances," denying him a fair trial. We affirm the trial court in part, reverse in part, and remand for resentencing.

*I. The amendment.* The defendant contends it was error for the trial court to permit the State to amend the information, which originally charged him with delivery for profit and possession with intent to deliver a controlled substance for profit, by adding a third count of conspiracy to commit those acts, all in violation of section 204.401(1), The Code 1977. Section 204.-401(1) provides:

> Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance, or to act with, enter into a common scheme or design with, or conspire with one or more other persons to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance.

(The controlled substance in this case is marijuana. Under § 204.204(4)(*j*), The Code 1977, that drug is a Schedule I controlled substance.)

The defendant contends the amendment adding conspiracy charges a "wholly new and different offense," impermissible under our rules, which provide:

1. See Iowa R.Crim.P. 10(2), which provides:
Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. *The following must be raised prior to trial*:

The court may, on motion of the state, and before or during the trial order the indictment amended so as to correct errors or omissions in matters of form or substance. Amendment may be allowed before or during trial *when no substantial rights of the defendant are prejudiced by the amendment, and if a wholly new and different offense is not charged.*

Iowa R.Crim.P. 4(8)(a) (emphasis added). The State answers that the defendant failed to raise the issue in the trial court and has therefore waived it. Furthermore, it argues that the new rule, proscribing only "wholly new and different offenses," grants more latitude in amending than its predecessor, section 773.46, The Code 1977. It concedes conspiracy would be a "different" offense proscribed by section 773.46, but argues it is not a *wholly* new and different offense under rule 4(8)(a). While we share some of the State's doubts about whether the error was preserved in the trial court,[1] we nevertheless address the multiple-count issue because it bears on our resolution of another issue, under Division V, whether Williams was properly sentenced for three separate crimes.

Following the trial of this case, we decided *State v. Sharpe*, 304 N.W.2d 220, 223 (Iowa 1981), which held rule 4(8)(a) was merely a reenactment of the prior statute. In examining the "wholly new" language of the new rule, we concluded that, while it did not grant the kind of additional amendment latitude claimed by the State here, it was not surplusage: it preserved the right to amend by charging a different *means* of committing an offense under our earlier amendment statute. *Id.* at 223; *see State v. Fuhrmann*, 257 N.W.2d 619, 624 (Iowa 1977) (amendment to murder information, adding alternative felony-murder count, permissible).

\* \* \* \* \* \*

*b.* Defenses and objections based on defects in the indictment or information . . . . (Emphasis added.)

■ The amendment here was clearly intended to add a third offense, and the parties have so treated it throughout the proceedings. Nevertheless, the effect of the amendment was not to add another offense but to merely add a new means of committing the same offense, drug trafficking, and is permissible under rule 4(8)(a). *State v. Sharpe*, 304 N.W.2d at 223; *cf. State v. Fuhrmann*, 257 N.W.2d at 624 (amendment under section 773.43, The Code 1975). We are led to that conclusion by examination of the language of section 204.401(1)(a) and of cases interpreting the federal statutory counterpart, 21 U.S.C. § 841(a)(1), which provides:

> Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
>
> (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance. . . .

Federal cases hold references, in section 841(a)(1), to various acts of trafficking do not constitute separate offenses but only alternative means of committing the same offense. Most of them arise under allegations that the indictment is duplicitous, *i. e.*, charges more than one offense in the same count. *See, e. g., United States v. Viserto*, 596 F.2d 531, 538 (2d Cir.), *cert. denied*, 444 U.S. 841, 100 S.Ct. 80, 62 L.Ed.2d 52 (1979). In *Viserto* the court held the defendant had waived the objection of duplicity, and

> [i]n any event, the statute, 21 U.S.C. § 841(a)(1), makes distribution and possession with intent to distribute a single offense. The indictment is in the standard form used to set out the means by which the single offense may be committed.

*Accord, United States v. Orzechowski*, 547 F.2d 978, 986–87 (7th Cir. 1976) *cert. denied*, 431 U.S. 906, 97 S.Ct. 1701, 52 L.Ed.2d 391 (1977); *United States v. Herbert*, 502 F.2d 890, 893–94 (10th Cir. 1974) *cert. denied*, 420 U.S. 931, 95 S.Ct. 1134, 43 L.Ed.2d 403 (1975) (section 841(a)(1) "sets forth several ways in which the statute may be violated, including . . . both distributing and possessing with an intent to distribute. Such being the case, it is proper to allege in the conjunctive, without the indictment being duplicitous.")

We believe section 204.401(1)(a), like the federal act, is a trafficking statute providing for several means of its violation.[2] *See State v. Boothe*, 285 N.W.2d 760, 762 n.1, 764–65 (Iowa Ct.App.), *aff'd*, 284 N.W.2d 206 (Iowa 1979). In *Boothe*, the defendant was charged with manufacturing, or possessing with intent to manufacture, a controlled substance. The court said:

> The conviction was of a single offense in violation of section 204.401(1) alleged to have been committed in alternative ways, i. e. by manufacturing a controlled substance or by possession of a controlled substance with intent to manufacture. No objection has been made by defendant to this procedure.

285 N.W.2d at 762 n.1. This view is further supported by the fact the legislature made no distinction in the culpability of the various acts described in section 204.401(1)(a), *e. g.*, possession with intent to deliver and actual delivery. Severity of punishment for the various violations does not turn upon which the various *acts* were committed in violation of that section, but rather what controlled *substance* was involved. *See* §§ 204.401(1)(a)–(d) (violations of section 204.401 designated as simple misdemeanors through class "C" felony, depending upon the substance involved).

We conclude the amendment here, adding only a different means of violating section 204.401(1)(a), did not allege a "wholly new and different offense" under rule 4(8)(a). Having so concluded, however, the issue of the propriety of the amendment is still not resolved; the rule further provides that such amendment may be allowed only "when no substantial rights of the defendant are prejudiced by the amendment." Williams' only claim of prejudice is that by allowing the conspiracy charge to be added

---

2. Although Iowa's section 204.401(1)(a) differs from the federal act by adding conspiracy as one of the means of its violation, this does not change the basic nature of the act.

the State was allowed to introduce hearsay evidence which would not have been admissible under the other two "charges." However, under our view of section 204.-401(1)(a), there was in fact only one offense charged; the defendant's claim that the increased likelihood of conviction of "other" offenses because conspiracy is charged is therefore inapposite. The propriety of sentencing under each of the counts is discussed in Division V.

*II. The hearsay objections.* Judith Wenck testified for the State regarding her conversations with three individuals. On appeal the defendant argues the trial court erred in admitting her testimony on out-of-court statements made (1) by an alleged coconspirator, Gary Jochims, that the quality of marijuana which the defendant had for sale to Wenck was "good stuff"; (2) by the defendant's wife Barbara, another alleged coconspirator, that the defendant "wanted" $135 for the marijuana offered for sale to Wenck; and (3) by a George Beaderstedt, that he had contacted the defendant to set up an earlier sale of drugs.

The State argues, and the defendant concedes, that declarations of a coconspirator are not violative of the hearsay rule if made "during the course and in furtherance of" a conspiracy in which the accused was a member. However, the defendant argues that at the time the coconspirators' statements were introduced at trial, the independent evidence was insufficient to establish the conspiracy as to the persons whose out-of-court statements were offered. In *Glasser v. United States*, 315 U.S. 60, 74–75, 62 S.Ct. 457, 467, 86 L.Ed. 680, 701 (1942), the Court said that statements by a member of a conspiracy

> are admissible over the objection of an alleged coconspirator, who was not present when they were made, only if there is proof aliunde that he is connected with the conspiracy. Otherwise, hearsay would lift itself by its own bootstraps to the level of competent evidence.

(Citations omitted.) Because we conclude the statements related by Wenck were not hearsay, we need not decide here whether the record provides a preliminary foundation as suggested by *Glasser.*

■ In determining whether these statements constitute hearsay, the critical inquiry is: For what purposes were they offered into evidence? *State v. Galvan,* 297 N.W.2d 344, 346 (Iowa 1980). If offered "to prove the truth of the matter asserted," they are inadmissible as hearsay unless they come within a recognized exception to the hearsay rule. *State v. Baker,* 293 N.W.2d 568, 574 (Iowa 1980). The Court's review is limited to abuses of discretion, and a ruling by the trial court will be upheld so long as there is one hearsay theory of admission applicable under the circumstances. *Id.*

■ The State contends Jochims' statement was offered "to show why Wenck selected and purchased one particular package of marijuana." The inference is that, together with Wenck's testimony that she and the defendant had discussed her option to purchase three grades of marijuana at different prices from the defendant, "one being of a better consistency and fiber than the other two," the defendant was in the *business* of distributing various grades of marijuana for various prices. This inference in turn bears on the issue of the defendant's intent to deliver the drug for profit. Thus, it is irrelevant whether the marijuana was in fact "good stuff." *See State v. Baker,* 293 N.W.2d at 574–75.

■ According to the State, Barbara Williams' statement that the defendant "wanted" $135 for the marijuana was offered "to show why Judith Wenck intended and expected to purchase one quarter pound of marijuana and why she went to the purchase with $160 in serialized twenty dollar bills." Again, the chain of inferences is the same: that the defendant was a *distributor* of various grades of marijuana and not a mere user or source of accommodation, and that his status as a distributor was relevant to show his intent to make a profit in the sale to Wenck. The truth or falsity of the statement—whether or not the defendant had set the price of the marijuana at $135— is irrelevant.

The State argues that Beadersteadt's statement was not offered for the truth of the matter asserted, but offered "to show why Wenck went to [defendant's] residence with Beadersteadt and why she introduced herself to Barbara Williams [as] 'Judith Wenck, the lady who had purchased hashish through George Beadersteadt' . . . [and] to show the reason for Wenck's later actions." This statement also tended to show that the defendant intended to make a profit in his sale to Wenck; it indicated that the defendant had earlier supplied marijuana to Wenck for $140, a figure which later testimony established would turn a profit for the defendant. *See State v. Gibb*, 303 N.W.2d 673, 676 (Iowa 1981). Wenck's testimony would also appear to be admissible to show her identity as the purchaser in the prior sale, *see* 6 J. Wigmore, *Evidence* § 1791, at 240 (1940) (utterances serving to identify time, place, or person admissible "so far as they have a real service for that purpose and are not used as a pretext for introducing a hearsay assertion"). Accordingly, it does not matter whether the defendant in fact had set up an earlier sale of drugs; the truth of that assertion is not sought to be established by relating Beadersteadt's statement.

Because each statement was admissible without regard to its truth or falsity, it was not error to admit them over the hearsay objection.

*III. Expert testimony.* The defendant argues the trial court abused its discretion in admitting testimony by deputy Bruce C. Bolin concerning the market price of marijuana in Tama County in August, 1978. Bolin testified that he had been a Tama County deputy sheriff for three-and-a-half years, that he had had occasion since 1972 to participate in drug-sale investigations in the Tama County area, and that his opinion was based on information obtained from confidential sources working for the sheriff's department in August, 1978. His opinion was that the general "street price" paid for marijuana in Tama County in August, 1978, was $25.00 to $35.00 per ounce. The defendant argues that there was insufficient showing that Bolin possessed the requisite skill, knowledge or experience in the field to qualify him to testify as to the value of the marijuana. We have held such matters to be proper subjects of expert testimony, *State v. Heck*, 301 N.W.2d 741, 742–43 (Iowa 1981), and qualification is largely a matter of trial court discretion. *State v. Hall*, 297 N.W.2d 80, 84–85 (Iowa 1976); C. McCormick, Handbook of the Law of Evidence, § 13, at 29–31 (1972); McCormick, *Opinion Evidence in Iowa,* 19 Drake L.Rev. 245, 270–71 (1970).

Although not strong, we believe the showing of Bolin's qualifications was sufficient. In any event, Bolin's testimony was merely cumulative: Judith Wenck testified on direct examination to the same value; and defendant, who did not object, then cross-examined her at length, developing a further basis for her opinion. Under these circumstances, we do not believe the court abused its discretion in admitting Bolin's testimony.

*IV. Defendant's motion in limine.* The defendant, seeking to preclude the State from referring at trial to certain items seized from a bedroom in their home, filed a motion in limine, Iowa R.Crim.P. 10(2)(g). He contended then, as he does now, that since the bedroom was under Jochims' exclusive control, the evidence seized was irrelevant and prejudicial to the defendant. Ruling on the motion was reserved until trial. It was overruled in the court's findings and conclusions, on the basis of a lack of standing on the part of the defendant.

The general definition of relevancy is whether the evidence has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Kalianov v. Darland*, 252 N.W.2d 732, 735 (Iowa 1977); *see* Fed.R.Evid. 401. The defendant argues that the evidence was irrelevant because it belonged to Jochims, who occupied the bedroom from which it was seized. However, the trial court found as a matter of fact that Jochims was only using the bedroom temporarily, and that most of the

property within it was owned by the defendant. Jochims testified he was only "visiting" the Williams; no rent was ever paid, and Williams had continued to keep his personal belongings in the room. There was thus substantial evidence the property seized was that of Williams, and it was clearly relevant, consisting of a set of "grocery-type scales" and marijuana residue found on a paper under the scales. As the State argues, this evidence tended to show that there was an intent on the part of the defendant to deliver the substance for profit, the inference being that he was engaged in packaging and distributing marijuana, that he was a source of supply to others rather than a mere user. *See State v. Boyd*, 224 N.W.2d 609, 612–13 (Iowa 1974) (presence of weighing scales in close proximity to marijuana sufficient, *inter alia*, to permit inference of intent).

Relevant evidence will not be excluded on the ground of prejudice, as urged by Williams, unless its probative value is *substantially* outweighed by the danger of unfair prejudice. *Kalianov v. Darland*, 252 N.W.2d at 736; *see* Fed.R.Evid. 403. No such prejudice appears here; the evidence seized was "prejudicial" in the sense it strengthened the case against Williams, but it was not the type of prejudice which would mandate its exclusion. Under such circumstances, there was no error in admitting the evidence.

*V. Double punishment.* The defendant was convicted on all three "counts" in the trial information. On appeal he asserts that his conviction for conspiracy under section 204.401(1) constituted "double punishment" and was void as a matter of law. The "conspiracy charge" was only one of the alternative means of violating section 204.401(1); it was not a separate offense for the reasons discussed in Division I. Therefore, section 706.4, The Code 1979 ("[a] person may not be convicted and sentenced for both the conspiracy and for the public offense"), is inapplicable. Judgment for the three separate "offenses" must be vacated and the case remanded for resentencing for one offense, that of violating section 204.401(1)(a).

*VI. General errors.* The defendant contends that, because of a combination of errors, he was denied a fair trial. Under this assignment of error he has merely collected other errors raised and disposed of under his other specific assignments, together with others not raised in the trial court. We have previously disposed of the specific assignments and have concluded there was no error shown. Because the other issues were not raised in the trial court, we will not consider them on appeal.

The case is affirmed as to the violation of section 204.401(1)(a), The Code; however, it is reversed insofar as sentences for three individual "offenses" were imposed. The case is remanded for resentencing for a single offense, a violation of section 204.-401(1)(a).

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR RESENTENCING.