# IN THE SUPREME COURT OF IOWA

No. 19–2112

Submitted September 16, 2021—Filed October 22, 2021

**STATE OF IOWA,**

Appellee,

vs.

**JAMES PAUL VANDERMARK,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, William P. Kelly, Judge.

The defendant appeals from his conviction of willful injury causing bodily injury, claiming the district court impermissibly permitted the State to amend the trial information filed against him. **DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT REVERSED, SENTENCE VACATED, AND REMANDED.**

McDonald, J., delivered the opinion of the court, in which Appel, Oxley, and McDermott, JJ., joined. Mansfield, J., filed a dissenting opinion, in which Christensen, C.J., and Waterman, J., joined.

Daniel M. Northfield, Urbandale, for appellant.

Thomas J. Miller, Attorney General, and Thomas E. Bakke, Assistant Attorney General, for appellee.

**McDONALD, Justice.**

This court has taken a "relatively narrow view" of the circumstances under which the state may amend a trial information. *State v. Sharpe*, 304 N.W.2d 220, 222 (Iowa 1981). The district court "may" allow an amendment to correct "errors or omissions" in a trial information. Iowa R. Crim. P. 2.4(8)(*a*); *see State v. Maghee*, 573 N.W.2d 1, 5 (Iowa 1997).[1] However, "[a]mendment is not allowed" if the amendment charges a "wholly new and different offense" or if it prejudices the "substantial rights of the defendant." Iowa R. Crim. P. 2.4(8)(*a*). The question presented in this appeal is whether the district court erred in deviating from the relatively narrow view in allowing the State to amend a charge of assault causing bodily injury to a charge of willful injury causing bodily injury.

I.

The offense conduct is largely undisputed. On April 10, 2019, Edgar Rodriguez and his spouse were seated in a hospital waiting room with their son to see a doctor. The defendant, James Vandermark, entered the waiting room, approached Rodriguez, punched Rodriguez in the face and head between seven and ten times, and then turned and left the hospital. Rodriguez was left with marks to his face and head, including a black eye. Rodriguez testified he still feels that his nose is crooked.

The State charged Vandermark with assault causing bodily injury, a serious misdemeanor, in violation of Iowa Code section 708.2(2) (2019),

---

[1]Although the rule refers solely to indictments, it is equally applicable to trial informations. Iowa R. Crim. P. 2.5(5); *State v. Brothern*, 832 N.W.2d 187, 192 (Iowa 2013).

punishable by a term of incarceration not to exceed one year. One week prior to trial, the State moved to amend the trial information to charge Vandermark with willful injury causing bodily injury, a class "D" felony, in violation of Iowa Code section 708.4(2), punishable by a term of incarceration not to exceed five years. At the same time, the State provided notice it would seek a habitual offender enhancement pursuant to Iowa Code section 902.8, enhancing the punishment for the felony offense to an indeterminate term of incarceration not to exceed fifteen years with a mandatory minimum sentence of three years.

The motion to amend was argued and decided on the day of trial. The State argued the amended charge was not wholly new and different because it arose out of the same facts noticed in the minutes of testimony. On the same basis, the State argued Vandermark would not suffer any prejudice as a result of allowing the amendment. Vandermark contended the amended charge was wholly new and different because it increased the potential punishment and required proof of different elements. The district court agreed with the State, concluding that the amendment should be allowed because the amended charge included additional elements that made the State's case more difficult to prove, the elements were "substantially similar," and the underlying facts (such as the date, time, place, defendant, and victim) remained the same. The district court also denied Vandermark's motion to continue trial to prepare a defense against the new charge.

The case proceeded to trial, and the jury found Vandermark guilty of willful injury causing bodily injury. After the verdict, Vandermark waived his right to

trial on the habitual offender enhancement. Subsequent to the jury's verdict but prior to sentencing, Vandermark was convicted of misdemeanor assault and harassment in two unrelated cases. At a combined sentencing hearing for all three convictions, the district court imposed the fifteen-year sentence for the conviction of willful injury causing bodily injury, said sentence to run consecutive to one of the misdemeanor sentences and concurrent to the other.

Vandermark timely appealed, and we transferred the matter to the court of appeals. On appeal, Vandermark argued there was insufficient evidence to support his conviction for willful injury, the district court erred in granting the State's motion to amend the trial information, the district court abused its discretion in denying him a continuance to prepare his defense against the new charge, and the district court abused its discretion in imposing sentence.

The court of appeals affirmed Vandermark's conviction and sentence. The court of appeals held there was sufficient evidence to support the jury's verdict. With respect to the motion to amend, the court of appeals affirmed the decision of the district court. Relying on *State v. Brisco*, 816 N.W.2d 415 (Iowa Ct. App. 2012), the court of appeals reasoned the amended charge of willful injury was not wholly new and different from the original assault charge because the "amended charge referenced the same time, date, place, and alleged actions, was within the same assault classification, did not involve additional witnesses, and was supported by the original minutes of testimony." The court of appeals reasoned Vandermark did not suffer any prejudice because he was offered the opportunity to plead guilty without the habitual offender enhancement prior to

trial and because he did not assert the amendment forced any change in his trial strategy. The court of appeals held the district court did not abuse its discretion in denying Vandermark's motion to continue trial. Finally, the court of appeals held the district court did not abuse its sentencing discretion.

We granted Vandermark's application for further review. "On further review, we have the discretion to review any issue raised on appeal." *Burton v. Hilltop Care Ctr.*, 813 N.W.2d 250, 255 (Iowa 2012) (quoting *State v. Marin*, 788 N.W.2d 833, 836 (Iowa 2010), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699 (Iowa 2016)). We exercise our discretion to review only the district court's ruling on the motion to amend the trial information. The court of appeals decision is final as to all other issues.

II.

The district court must disallow the State's motion to amend a trial information if the amendment charges a "wholly new and different offense" or if the amendment prejudices the "substantial rights of the defendant." Iowa R. Crim. P. 2.4(8)(*a*). Whether an amendment charges a wholly new and different offense or prejudices the substantial rights of the defendant are questions of law, and our review is for the correction of legal error. *See Maghee*, 573 N.W.2d at 5.

What constitutes and does not constitute a wholly new and different offense is well established. Forty years ago, in *State v. Sharpe*, we held an amendment charged a wholly new and different offense where the amended charge both increased the potential punishment and charged an offense with different or additional elements. *Sharpe*, 304 N.W.2d at 222–23.

We have also been clear on what does not constitute a wholly new and different offense. An offense is not wholly new and different where the amendment charges the same base prohibition but alleges "different means" of committing the same base prohibition. *Id.*; *see State v. Schertz*, 330 N.W.2d 1, 2–3 (Iowa 1983) (allowing amendment to charge a different means of committing kidnapping in the first degree); *State v. Williams*, 305 N.W.2d 428, 431 (Iowa 1981) ("Nevertheless, the effect of the amendment was not to add another offense but to merely add a new means of committing the same offense, drug trafficking, and is permissible . . . ."). Nor is an offense wholly new and different where the amendment charges the same prohibition but adds a predicate or predicates for enhanced punishment in the context of drug trafficking or recidivist statutes. *See, e.g., Maghee*, 573 N.W.2d at 5 ("We agree with the State that under these circumstances the amendment did not charge a 'wholly new or different offense.' Rather, the amendment charged the same offense but with a larger amount of drugs involved resulting in a potentially more severe sentence."); *State v. Berney*, 378 N.W.2d 915, 919 (Iowa 1985) (holding that amendment alleging defendant to be a habitual offender did not define a new crime but merely constituted a predicate for enhanced punishment), *overruled on other grounds by State v. Bruce*, 795 N.W.2d 1 (Iowa 2011).

Here, the proposed amendment charged a wholly new and different offense within the meaning of rule 2.4(8)(*a*) and our cases interpreting the same, and the district court erred in allowing the amendment. First, the amendment increased the level of punishment from a term of incarceration not to exceed one year to

an indeterminate term of incarceration not to exceed five years and the maximum fine from $1,875 to $7,500. *Compare* Iowa Code § 903.1(1)(*b*) (maximum sentences for misdemeanors), *with id.* § 902.9(1)(*e*) (maximum sentences for felonies). Second, the amended charge altered the elements of the offense. To prove assault causing bodily injury, the State was required to prove, among other things, that Vandermark acted with the specific intent to cause pain or injury to the victim, to result in physical contact that would be insulting or offensive to the victim, or to place the victim in fear of physical contact that would be injurious or offensive. *Id.* § 708.1(1)–(2). To prove Vandermark committed willful injury, the State was required to prove, among other things, that he acted with the specific intent to cause serious injury to the victim. *Id.* § 708.4. The elements of the two offenses are different. Contrary to the district court's reasoning, it is immaterial that the additional or different element(s) makes the State's case more difficult to prove. *See, e.g., Sharpe,* 304 N.W.2d at 223 (holding amendment to allege first-degree murder was improper even though it required proof of additional elements compared to second-degree murder).

The State disagrees that the crimes contain different elements, arguing the offenses are essentially the same because both crimes require proof of specific intent. While the State is correct in asserting both the original and amended charge include a specific intent element, the State's argument is nonetheless unavailing because the result a defendant must specifically intend is different. The willful injury offense requires proof the defendant acted with specific intent to cause an injury of great severity. Specifically, the defendant must act with the

intent to cause a "[d]isabling mental illness" or a bodily injury that "[c]reates a substantial risk of death," "[c]auses serious permanent disfigurement," or "[c]auses protracted loss or impairment of the function of any bodily member or organ." Iowa Code § 702.18 (defining a "serious injury"). The intent to cause a serious injury is not an element of assault causing bodily injury. The specific intent elements are thus different.

In concluding that the charge of willful injury causing bodily injury was not wholly new and different from assault causing bodily injury, the court of appeals relied on *State v. Brisco*. In that case, the defendant was charged with two counts of delivery of a controlled substance, crack cocaine, in violation of Iowa Code section 124.401. *Brisco*, 816 N.W.2d at 416. The state was granted leave to amend the trial information to charge the defendant with two counts of delivery of a controlled substance, marijuana. *Id.* The *Brisco* court reasoned the amendment was permissible for several reasons. First, the amended trial information charged the same "base prohibition" and merely alleged different means of committing the same offense, drug trafficking. *See id.* at 418–19. This conclusion was consistent with our caselaw that section 124.401 "defines one offense, drug trafficking, and enumerates numerous alternative means of committing it." *State v. Abrahamson*, 746 N.W.2d 270, 276 n.6 (Iowa 2008). Second, the defendant "faced a lesser penalty under the amended information" rather than a greater penalty. *Brisco*, 816 N.W.2d at 419. Third, the *Brisco* court stated the amended trial information was permissible because it "contained the same times, dates, and places of the alleged offenses. The State's theory of the

offenses and the defenses would be identical under each." *Id.* The court of appeals seized on this last portion of *Brisco* in concluding that the amendment in this case was proper.

We conclude the court of appeals erred in relying on this language in *Brisco* because the statement was an incorrect statement of law with respect to what constitutes a wholly new and different offense. Other than predicates for enhanced sentencing under drug trafficking and recidivist statutes, we have focused on whether the new charge increases the potential punishment and requires proof of different or additional elements. *See Maghee*, 573 N.W.2d at 5–6; *Sharpe*, 304 N.W.2d at 223. The court of appeals erred in holding otherwise.[2]

The State argues, and the dissent agrees, this court should reject the bright-line rule announced in *Sharpe* and adopt a more holistic, ad hoc approach in determining whether an amendment is wholly new and different. We decline

---

[2]While the court of appeals erred in relying on this language in *Brisco* to determine whether the amendment charged a wholly new and different offense, we note these additional considerations listed in *Brisco* may be relevant in determining whether an amendment would prejudice the substantial rights of a defendant. "An amendment prejudices the substantial rights of the defendant if it creates such surprise that the defendant would have to change trial strategy to meet the charge in the amended information." *Maghee*, 573 N.W.2d at 6. Relevant to this inquiry is whether the defendant had notice of facts that would support the amendment, whether the defendant was prepared to defend against the charge as amended or sought a continuance, and whether the amendment would change the defense strategy. *See id.* With respect to the effect of surprise on defense strategy, "the critical test . . . is whether the defense's challenge to the prosecution's evidence and presentation of its own evidence will have the same bearing upon the amended pleading as the original pleading, and that may not always be the case even when the defense was previously aware of the factual basis of the amendment." 5 Wayne R. LaFave et al., *Criminal Procedure* § 19.5(b) (4th ed. 2020) [hereinafter LaFave] (footnote omitted). Prejudice may also arise "if the defendant had no prior notice of the State's plan to amend and would have pled guilty had he or she known of that plan before trial." *State v. Brothern*, 832 N.W.2d 187, 196 (Iowa 2013). If an amendment does surprise the defendant, prejudice "ordinarily may be avoided by granting a continuance." 5 LaFave § 19.5(b); *see Schertz*, 330 N.W.2d at 2–3. Because we have already concluded that the amendment of the trial information from assault causing bodily injury to a charge of willful injury causing bodily injury asserted a wholly new and different offense, we need not resolve the question whether Vandermark would have suffered prejudice in allowing the amendment. *See Maghee*, 573 N.W.2d at 6; *Williams*, 305 N.W.2d at 431.

to do so. The bright-line rule announced in *Sharpe*, and reaffirmed here today, protects the role of the courts in screening criminal charges, promotes consistency in the application of the criminal rules, is the majority rule in this country, and is of long-standing.

The bright-line rule announced in *Sharpe* "protect[s] the role of the agency that screened the charge, whether the grand jury in the case of an indictment or the magistrate in the case of an information." 5 Wayne R. LaFave et al., *Criminal Procedure* § 19.5(b) (4th ed. 2020) [hereinafter LaFave]. Specifically, Iowa Rule of Criminal Procedure 2.5(4) provides that a trial information must be screened and approved by a judge or magistrate prior to filing. In exercising the screening function, the judge or magistrate must find "that the evidence contained in the information and the minutes of evidence, if unexplained, would warrant a conviction by the trial jury." Iowa R. Crim. P. 2.5(4). Once a neutral and detached decision-maker has determined that the state has identified evidence sufficient to charge a defendant with a particular offense with a particular punishment, the state should not be at liberty to supplant that determination and charge the defendant with a different crime subject to greater punishment. *See State v. McKeehan*, 894 S.W.2d 216, 223 (Mo. Ct. App. 1995) ("In considering whether an amended information charges a new or different offense, courts have considered the charge upon which a preliminary hearing was granted."). Allowing the state to amend a judicially-approved trial information to charge an offense with different elements and different punishments works an end-run around rule 2.5(4) and the judicial officers that screened and approved the original trial

information. It would add to the already great discretion afforded the prosecutor in charging the criminal defendant. *See Sharpe*, 304 N.W.2d at 223. As we stated in *Sharpe*, "[w]e do not believe the legislature intended to invest such wide discretion" under rule 2.4(8)(*a*). *Id.*

Second, *Sharpe* better promotes consistency in the administration of justice than the rule articulated in *Brisco* and advanced by the State and dissent. Comparison of the elements and potential punishments for different offenses is a straightforward exercise that can be accomplished in an objective and consistent manner. In contrast, requiring the district court to evaluate the minutes of testimony, the underlying facts, and the litigants' theories and trial strategies (which they may understandably be reluctant to disclose) and determine how those theories and strategies will be affected by a proposed amendment is a much more subjective undertaking. This more subjective undertaking would result in inconsistent determinations across the state of what constitutes a new and different offense. This is particularly true given that the trial court judge is frequently new to the file at the time of trial and may have had only a few minutes to become familiar with the facts of the case as alleged.

Third, these administration-of-justice concerns have led the majority of jurisdictions to adopt a narrow, elements-based approach similar to our rule in *Sharpe. See* 5 LaFave § 19.5(b) ("[M]ost courts will apply the . . . standard that looks to the elements of crime in determining whether two statutes proscribe the same offense."); *see also, e.g.*, *Fleming v. State*, 814 So. 2d 310, 311 (Ala. Crim. App. 2001) ("The offense of first-degree receiving stolen property is not

encompassed within the offense of first-degree theft charged in the indictment. They are separate and distinct offenses."); *State v. Montes Flores*, 428 P.3d 502, 506 (Ariz. Ct. App. 2018) (stating the charging document " 'limits the trial to the specific charge or charges' alleged" and that an amendment that alleges an offense with "materially different elements" is disallowed (quoting Ariz. R. Crim. P. 13.5(b))); *State v. Matautia*, 912 P.2d 573, 580 (Haw. Ct. App. 1996) ("Because driving without a license is not a lesser included offense of driving while license suspended under any of the three tests, the amended charge against Defendant alleged an 'additional or different offense' and was thus improper . . . ."), *overruled on other grounds by State v. Castillon*, 398 P.3d 831 (Haw. Ct. App. 2017); *State v. Westgate*, 148 A.3d 716, 724 (Me. 2016) (stating amendment is prohibited if it changes the grade of the offense); *State v. Barthman*, 917 N.W.2d 119, 125–26 (Minn. Ct. App. 2018) ("An amendment charges a different offense if it 'affects an essential element of the charged offense.' " (quoting *State v. Guerra*, 562 N.W.2d 10, 13 (Minn. Ct. App. 1997))), *affirmed on other grounds*, 938 N.W.2d 257 (Minn. 2020); *State v. Simpson*, 846 S.W.2d 724, 727 (Mo. 1993) (en banc) (amended charge of class "A" felony forcible rape was a different offense from original charge of class "B" felony rape because the former included an the additional element of displaying a dangerous instrument in a threatening manner); *State v. Pemberton*, 930 N.W.2d 125, 130 (N.D. 2019) (holding the district court abused its discretion in allowing amendment that "modified the elements"); *State v. Mullins*, 705 N.E.2d 709, 710 (Ohio Ct. App. 1997) (stating amendment is disallowed where it "contain[s] different elements which require

independent proof"); *Tillman v. Cook,* 855 P.2d 211, 215 (Utah 1993) ("Whether an amendment charges an additional or different offense turns on whether different elements are required to prove the offense charged in the amended information or whether the offense charged in the amended information increased the potential punishment from that originally charged.").

Finally, stare decisis dictates that we should not disturb our decision in *Sharpe.* "Stare decisis alone dictates continued adherence to our precedent absent a compelling reason to change the law." *Book v. Doublestar Dongfeng Tyre Co.,* 860 N.W.2d 576, 594 (Iowa 2015). *Sharpe* has not proved to be unworkable in the four decades since it was decided—as evidenced by the relatively small number of cases involving the issue that the state's appellate courts have faced. *See Youngblut v. Youngblut,* 945 N.W.2d 25, 45 (Iowa 2020) (McDonald, J., dissenting) ("The absence of litigation regarding the issue is strong evidence the . . . rule has been administered without much difficulty in the district courts for almost three decades despite its dubious logic."). The State has not demonstrated a compelling reason to depart from our precedent here.

### III.

This brings us to the question of remedy. When a defendant is sentenced for multiple offenses and a portion of the sentence is vacated, "we may vacate the invalid part without disturbing the rest of the sentence." *State v. Keutla,* 798 N.W.2d 731, 735 (Iowa 2011) (citing *State v. Krivolavy,* 258 N.W.2d 157, 158 (Iowa 1977)). "We are not, however, required to do so and may remand for resentencing" even if the sentences are severable. *Id.* Remand for resentencing

is appropriate when the district court considered the sentences to be interconnected in imposing them. *Id.*; *see State v. Madsen*, 813 N.W.2d 714, 730 (Iowa 2012).

On this record, we conclude that the district court's sentencing on the misdemeanor convictions was closely tied to its sentencing on willful injury causing bodily injury. This is particularly true since one misdemeanor sentence was imposed concurrent with the sentence for willful injury causing bodily injury, while the other was imposed consecutively. We therefore vacate Vandermark's conviction and sentence for willful injury causing bodily injury, vacate the misdemeanor sentences, and remand this matter for further proceedings, including resentencing on Vandermark's remaining convictions. *See Madsen*, 813 N.W.2d at 730; *Keutla*, 798 N.W.2d at 735.

**DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT REVERSED, SENTENCE VACATED, AND REMANDED.**

Appel, Oxley, and McDermott, JJ., join this opinion. Mansfield, J., files a dissenting opinion, in which Christensen, C.J., and Waterman, J., join.

**MANSFIELD, Justice (dissenting).**

I respectfully dissent and would affirm James Vandermark's conviction for willful injury causing serious injury. The majority opinion disregards the plain text of the rule and our own body of precedent. Instead, the majority rule picks out *one* case, *State v. Sharpe*, 304 N.W.2d 220 (Iowa 1981), and casts aside our subsequent decisions that qualified *Sharpe*. *See State v. Maghee*, 573 N.W.2d 1 (Iowa 1997); *State v. Berney*, 378 N.W.2d 915 (Iowa 1985), *overruled on other grounds by State v. Bruce*, 795 N.W.2d 1 (Iowa 2011); *State v. Williams*, 305 N.W.2d 428 (Iowa 1981). The majority's approach also leads to a questionable policy outcome. What public policy is served by requiring the State to start over with a new prosecution?[3]

I agree that our caselaw in this area is in need of clarification. But I would opt for a different approach than the majority's.

**I. "Wholly New and Different Offense."**

Iowa Rule of Criminal Procedure 2.4(8)(*a*) permits amendments to the trial information to correct errors or omissions of form or substance unless the amendment prejudices substantial rights of the defendant or charges "a wholly new and different offense."

One week before trial, the State moved to amend the information from assault causing bodily injury, a serious misdemeanor in violation of Iowa Code

---

[3]The statute of limitations has not run. *See* Iowa Code § 802.3.

section 708.2(2), to willful injury causing bodily injury, a class "D" felony in violation of section 708.4(2). The State also provided notice it would seek a habitual offender enhancement against Vandermark, who has substantial prior record of crimes of physical violence. The district court granted the motion.

Of course, as before, the case involved the same incident—namely, Vandermark's unprovoked beating of Edgar Rodriguez while Rodriguez was sitting in a hospital waiting room. The trial of this straightforward case took only a day and a half.

The defendant does not make a serious argument that he was prejudiced by the amendment. "An amendment prejudices the substantial rights of the defendant if it creates such surprise that the defendant would have to change trial strategy to meet the charge in the amended information." *Maghee*, 573 N.W.2d at 6. Vandermark does not claim surprise.

So that leaves the issue of whether the amended trial information charged a wholly new and different offense.

Both the original charge and the amended charge were crimes within chapter 708, the assault chapter of the Iowa criminal code. For purposes of this case, the only difference between the two charges is that the section 708.4(2) charge came with a stiffer penalty and higher burden of proof—i.e., intent "to cause serious injury" as opposed to intent "to cause pain or injury." *Compare* Iowa Code § 708.4(2), *with* § 708.1(2)(*a*). In fact, at trial the original section 708.1(2)(*a*) charge was submitted as a lesser included offense of the amended section 708.4(2) charge.

Using our starting point as the text of rule 2.4(8)(*a*), we need to decide whether this was a wholly new and different offense. It doesn't sound that way to me. It's the same incident, the same conduct (a physical assault), and the same consequence (bodily injury). The only difference is that the State had to prove intent to cause serious injury rather than intent to cause injury (or pain). Ask a person on the street whether this strikes them as "wholly new and different," and I think they would say no.[4]

**II. The Majority's Too Selective View of Precedent.**

We have decided about a half dozen cases on the meaning of "wholly new and different offense." Unfortunately, the majority wrongfully elevates the first case and downplays all the others.

The first case was *Sharpe*, 304 N.W.2d 220. In *Sharpe,* the trial court had allowed the state to amend the trial information from second-degree murder to first-degree murder. *Id.* at 222. We said that was improper because first-degree murder was a "wholly new and different offense" from second-degree murder. *Id.* at 223. We rejected the state's view that the amended charge was not wholly new and different because second-degree murder was merely a lesser included offense of first-degree murder. *Id.* We seemed to indicate that an amendment should be rejected whenever two things were true in combination: the new

---

[4]Iowa's unique wording—"wholly new and different"—distinguishes our standard for amending indictments and informations from the standard used in most jurisdictions. Most jurisdictions follow Federal Rule of Criminal Procedure 7(e), which prohibits an amendment that charges "an additional or different offense," as opposed to a "wholly new and different offense." *See* 5 Wayne R. LaFave et al., *Criminal Procedure* § 19.5(*b*), at 368 (4th ed. 2015). *Compare* Fed. R. Crim. P. 7(*e*), *with* Iowa R. Crim. P. 2.4(8)(*a*). Thus, I would not be surprised if other jurisdictions have taken a different interpretive approach than Iowa.

offense contained additional elements and there was a great disparity in punishment (at that time first-degree murder resulted in life imprisonment and second-degree murder in a twenty-five-year sentence). *Id.* We also said that "alleging a different means of committing the crime" would not be a wholly new and different offense. *Id.*

Notably, *Sharpe*'s entire discussion of amendments was dicta. Because the jury only found the defendant guilty of second-degree murder, the amendment didn't matter. *See id.* at 225. Any error was harmless. *Id.*

Only one month later, we began to qualify *Sharpe*. In *State v. Williams*, the original information charged delivery of marijuana and possession of marijuana with intent to deliver. 305 N.W.2d at 430. The state was then allowed to amend the information to add a conspiracy charge. *Id.* We held that this was permissible because "the effect of the amendment was not to add another offense but to merely add a new means of committing the same offense, drug trafficking." *Id.* at 431.

Two years later, in *State v. Schertz*, we upheld an amendment of a first-degree kidnapping trial information to add "an additional alternative, that the defendants 'intentionally subject[ed] [the victim] to torture.' " 330 N.W.2d 1, 2 (Iowa 1983) (first alteration in original). We explained that this was just "another means of committing a particular offense," namely first-degree kidnapping. *Id.*

Another two years later, in *State v. Berney*, we held that the state was properly permitted to amend its trial information to allege that the defendant was a habitual offender and therefore subject to increased punishment. 378

N.W.2d at 919. We explained that a recidivist law "does not define a separate crime but merely constitutes a predicate for enhanced punishment." *Id.*

Then, in *State v. Maghee*, we held that the state could amend a trial information to increase the quantity of drugs that the defendant was charged with possessing, thereby transforming the charged crimes from a class "C" felony to a class "B" felony. 573 N.W.2d at 4–6. We concluded the amendment did not charge a wholly new and different offense because it merely increased the amount of drugs involved with a potentially more severe sentence. *Id.* at 5. We said that the "elements under the original or amended charges [were] the same," even though the penalties were greater. *Id.*

Lastly, in *State v. Abrahamson*, we discussed the relationship between the speedy trial rule, rule 2.33, and the rule permitting amendment of trial informations, rule 2.4(8)(*a*). 746 N.W.2d 270, 274–77 (Iowa 2008). We rejected "the State's contention that manufacturing and conspiracy should be viewed as one offense in furtherance of the State's interest in amending an information, but be viewed as separate offenses when defendants seek to enforce their right to a speedy trial." *Id.* at 276.

Where does this caselaw leave us? Not, in my view, where the majority lands in this case. One principle is that we allow amendments alleging a different means of committing the same offense. But "same offense" is interpreted liberally, at least as to drug offenses. Everything in Iowa Code section 124.401 is apparently deemed one offense.

Also, post-*Sharpe* cases have not followed *Sharpe*'s dictum that amendments to add elements and penalties are improper. Apparently, the state *can* amend the trial information to add a new element and a greater penalty if the new element is an increased quantity of drugs or a prior conviction.

Finally, we have linked the state's ability to bring a new charge, despite the expiration of speedy trial deadlines, to the state's inability to amend the trial information to add that same charge. If the trial information can't be amended to add a charge, then the state has the option of bringing that charge in a new case, without being subject to prior speedy trial deadlines.

I agree the law is somewhat murky and in need of clarification. Contrary to the dicta in *Sharpe,* and today's majority opinion, I would find that an information can be amended to add an additional element, so long as the result is to charge basically the same offense. So one assault crime can be elevated to another assault crime within chapter 708. Of course, the criminal charge must be based on the same incident as before.

This result strikes me as logical for several reasons. First, it does not make sense to me to require the State to start over in that situation. In fact, under the majority's rule, the State could bring a charge of assault causing bodily injury, miss the speedy trial deadline for trying the case, and refile a charge of willful injury causing bodily injury . . . only to obtain a conviction on the original charge as a lesser included offense.

Second, the defendant always has the "no prejudice" backstop. If the amendment will prejudice substantial rights of the defendant, it will not be allowed. *See* Iowa R. Crim. P. 2.4(8)(*a*).

Third, the majority's rule may lead to overcharging. That is, to avoid the possibility of having to start over later, the prosecution may, as they used to say, "throw the book" at the defendant. Overcharging is unfair to defendants and unduly complicates trials and plea negotiations.

The Iowa justice system is not a Ptolemaic universe where we decide a case and everyone else simply follows us. The reality is more complex. Others follow our opinions, but they also *adapt* to them. We need to consider what adaptations will occur in this case.

### III. The Majority's Flawed Policy Arguments.

The majority offers a couple of policy arguments in support of its position. Both, in my judgment, are flawed.

First, the majority says its bright-line rule interpretation avoids "an end-run around rule 2.5(4) and the judicial officers that screened and approved the original trial information." But there was no end run here. The district court that approved the amendment performed the same screening that would have been required for an original trial information. *See id.* r. 2.5(4).

Second, the majority says that its bright-line rule interpretation avoids subjectivity—specifically, a determination of how "theories and strategies will be affected by a proposed amendment." Interesting theory, but the rule itself doesn't support it. For one thing, our rule necessarily requires an inquiry into how

theories and strategies will be affected under its prejudice prong. *See Maghee*, 573 N.W.2d at 6. So, bright lines are unattainable. Moreover, the wording "wholly new and different" is itself spongy. And the majority's rule interpretation isn't really a bright line anyway, since it puts drug offenses in a separate category.

For the foregoing reasons, I would affirm Vandermark's conviction and sentence.

Christensen, C.J., and Waterman, J., join this dissent.